Filed 6/12/14  P. v. Larsson CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B244013 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA385933) |
| v. | |
| LEIF LARSSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Leif Larsson appeals from the judgment entered following his plea of no contest to possessing an assault weapon (former Pen. Code, § 12280, subd. (b)) following the denial of his suppression and traversal motions (Pen. Code, § 1538.5). The court suspended imposition of sentence and placed appellant on formal probation for three years. We affirm.

## FACTUAL SUMMARY

The record reflects on June 9, 2011, Los Angeles Police Officer Thomas Tillery executed a search warrant at appellant's Tujunga residence and found inside an assault rifle.

## ISSUES

Appellant claims (1) the trial court erroneously denied his suppression motion, and (2) the trial court erroneously denied his motion to traverse the search warrant.

## DISCUSSION

1. *The Trial Court Properly Denied Appellant's Suppression Motion.*

In February 2012, appellant filed a Penal Code section 1538.5 suppression motion. Appellant argued Tillery conducted an unlawful warrantless search when Rocco Iacovelli took photographs of the assault rifle in appellant's bedroom after Tillery asked Iacovelli to take them and send them to Tillery. Appellant sought suppression of the fruits of the alleged unlawful search, including the fruits of the search warrant. We discuss below pertinent facts concerning Iacovelli's entry into appellant's bedroom and Iacovelli's taking of the photographs.

   a. *Pertinent Facts.*

   (1) *Tillery's Preliminary Hearing Testimony.*

Viewed in accordance with the usual rules on appeal (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597 (*Leyba*),[1] the evidence at appellant's January 2012 preliminary

---

[1]    The evidence at appellant's Penal Code section 1538.5 suppression hearing discussed *post* consisted of testimony presented at that hearing plus the preliminary hearing testimony.

hearing established as follows. Tillery was assigned to the gun unit of the gang and narcotics division. Tillery was an assault weapons expert.

On or before "June 9, 2010," Iacovelli contacted a law enforcement section and that section contacted Tillery because a specialized weapon was involved.[2] Up to that time, no photographs of the weapon, later identified as an assault weapon, had been taken.

Tillery called Iacovelli. At some point Iacovelli told Tillery that Iacovelli was the son of the owner of a two-room house in Tujunga. One room was appellant's bedroom. Iacovelli told Tillery that Iacovelli entered appellant's bedroom for the sole purpose of searching for animals so they could be cared for and fed. Iacovelli entered at his mother's request and, when he entered, he saw the assault weapon. Appellant was not present because he had been arrested in connection with an altercation between appellant and Iacovelli. At some point the house's owner told Tillery that appellant was renting the bedroom and was its sole resident.

During appellant's cross-examination of Tillery, appellant's counsel asked an ambiguous question suggesting he was asking Tillery to relate what Tillery and Iacovelli talked about during their initial conversation about appellant and weapons.[3] Tillery testified, "I asked Mr. Iacovelli if he could send me photographs of the weapon that was found or that he said he had seen in the defendant's bedroom."

Tillery asked Iacovelli to describe the weapon, and Iacovelli described it to the best of his ability. Tillery wanted to know what the weapon actually looked like. However, Tillery denied that, at that time, he asked Iacovelli to "go back," enter the bedroom, take photographs, and send them to Tillery. Tillery was certain when Iacovelli contacted Tillery, Iacovelli was inside the bedroom.

---

[2]     Other parts of the record indicate the events from the time Iacovelli first contacted law enforcement to the time Tillery executed the search warrant occurred in 2011.

[3]     Appellant's bedroom contained not only the assault weapon but two sets of metal knuckles.

The following then occurred during cross-examination: "Q. And at that time you asked him to take some additional photographs or did he have the ability to take the photographs at that time? [*Sic*.] [¶] A. He had the ability to take the photographs at that time, sir. [¶] Q. Did he take them? [¶] A. Yes, he did. [¶] Q. Did he send them to you? [¶] A. Yes, he did. [¶] Q. Were you satisfied with that? [¶] A. Yes, sir." Tillery never asked Iacovelli to go back and take additional photographs.

The following also occurred during cross-examination: "Q. . . . After when you called him, how, you know, did he indicate he wasn't in the bedroom when you called him, was he? [*Sic*.] [¶] A. Yes, sir. [¶] Q. And at that time when you asked him to attain those photographs, he was assisting you at that point in time; am I correct? [¶] A. Yes." Tillery relied on the photographs to conclude an illegal assault weapon was in the house. He obtained a search warrant for the house and, on "June 9, 2010," executed it. Tillery found the assault weapon and metal knuckles in appellant's bedroom.

(2) *Tillery's Testimony at the Suppression Hearing.*

At the March 2012 Penal Code section 1538.5 suppression hearing, Tillery testified as follows. Tillery did not know, prior to Tillery's initial conversation with Iacovelli, whether Iacovelli had taken photographs, or whether Iacovelli had sent photographs to another officer. When the detective came to Tillery's unit for assistance in identifying the weapon, Tillery, using the detective's phone, contacted Iacovelli. On June 8, 2011, Tillery had contact with Iacovelli.

Tillery also testified as follows. Tillery asked Iacovelli to describe the firearm Iacovelli initially had called about, and Iacovelli began to describe it. Iacovelli then told Tillery that Iacovelli had photographs of it. Tillery told Iacovelli to go ahead and send Tillery the photographs. Tillery never told Iacovelli to enter the place where the gun was found, take the photographs, or do anything with the gun. The prosecutor asked if Tillery directed Iacovelli to do anything "besides sending [Tillery] the photographs that [Iacovelli] had already taken." Tillery replied, ". . . throughout our phone conversation, I realized he was . . . in the defendant's room, and once I realized that, I told him to leave the room."

4

Tillery also testified as follows. Tillery had indicated he had conversed with Iacovelli while Iacovelli was in the room. Iacovelli already had taken the photographs but had not sent them to Tillery. The following then occurred: "Q When did you find out [Iacovelli] was in the room? [¶] A After he sent me the photographs -- when he said he was going to send me the photographs, I asked him several more questions about the rifle, and . . . as he was explaining it to me, it was as though he was looking at it."

Tillery also testified it had been an hour or hours since he had been informed the detective had spoken with Iacovelli, so when Tillery called Iacovelli, Tillery did not expect Iacovelli to still be in the room with the rifle. Tillery called Iacovelli and asked could Iacovelli describe the rifle to Tillery. Iacovelli began to describe it and said he could send photographs to Tillery. Tillery said go ahead and send them. Tillery asked Iacovelli what else did Iacovelli see, and Iacovelli replied, "I see a collapsible stock." Tillery asked if Iacovelli was looking at it right then, Iacovelli said yes, and Tillery told Iacovelli that Iacovelli needed to leave the room. After Iacovelli left the room, Tillery never asked Iacovelli to reenter it to take additional photographs. Iacovelli did not send additional photographs to Tillery.

Tillery later testified Iacovelli first described the weapon as an assault rifle, then described the caliber markings on its side. Tillery testified Iacovelli said the weapon had a pistol grip underneath the action, and that was when Iacovelli said, "Oh, I have some photographs of it I can send you." Tillery did not know when Iacovelli took the photographs but Iacovelli did not take them while Tillery was talking to him. The day after Tillery received the photographs from Iacovelli, Tillery executed a search warrant based on information depicted in the photographs. Tillery found the weapons as depicted and in their depicted locations.

(3) *Appellant's Suppression Hearing and the Court's Ruling.*

During the hearing on appellant's suppression motion, appellant's counsel conceded he had posed a compound question at the preliminary hearing, i.e., the question that included the phrase "did he have the ability to take the photographs at that time." The

5

court indicated as follows. The questions asked at the preliminary hearing were compound and ambiguous, and the result was "an ambiguous answer." The ambiguity at the preliminary hearing was whether (1) Tillery asked Iacovelli to take photographs or (2) Iacovelli already had taken them, and "that's where the compound question occurred."

The court stated, "the court finds factually that the officer's credible; that he did not make a request to take pictures; that the pictures were provided to him; [and] that it was a private actor who took the pictures." The court found credible Tillery's testimony he did not know Iacovelli was inside the bedroom until Iacovelli began describing the assault weapon in a way that conveyed Iacovelli was looking at it. The court concluded Iacovelli conducted a private search and Tillery did not conduct a "search[]" within the meaning of the Fourth Amendment. The court denied appellant's motion to suppress.

   b. *Analysis.*

Appellant claims the trial court erred by denying his suppression motion. He argues Tillery conducted an unlawful warrantless search when Tillery asked Iacovelli to take photographs of the assault weapon and Iacovelli complied. We reject the claim.

"It is well settled that the 'Fourth Amendment's prohibition against unreasonable search and seizure does not apply to searches by private citizens.' [Citations.]" (*People v. Warren* (1990) 219 Cal.App.3d 619, 622 (*Warren*).) "The Fourth Amendment's prohibition against unreasonable searches and seizures does not apply to searches by private citizens, *even if the private citizens act unlawfully*, unless the private citizen can be said to be acting as an agent for the government." (*People v. Wilkinson* (2008) 163 Cal.App.4th 1554, 1564, italics added.)

" 'While a certain degree of governmental participation is necessary before a private citizen is transformed into an agent of the state, *de minimis* or incidental contacts between the citizen and law enforcement agents prior to or during the course of a search or seizure will not subject the search to [F]ourth [A]mendment scrutiny.' [Citation.] The relevant factors used in determining whether the governmental participation is significant, or de minimis, are '(1) the government's knowledge and acquiescence, and (2) the intent of the

6

party performing the search.' [Citation.]" (*Warren*, at p. 622, quoting *United States v. Walther* (9th Cir. 1981) 652 F.2d 788, 791-792.)  Moreover, "An observation made from a location where police have the right to be does not constitute a search, and invades no constitutionally protected privacy interest." (*People v. Goldberg* (1984) 161 Cal.App.3d 170, 188 (*Goldberg*).)

When reviewing the denial of a defendant's Penal Code section 1538.5 suppression motion, we defer to the trial court's express and implied factual findings to the extent they are supported by substantial evidence, and exercise our independent judgment as to whether a search or seizure was reasonable under the Fourth Amendment based on the facts so found.  (*People v. Glaser* (1995) 11 Cal.4th 354, 362 (*Glaser*); *Leyba, supra*, 29 Cal.3d at pp. 596-597.)

In the present case, there was substantial evidence as follows.  Iacovelli entered appellant's bedroom at Iacovelli's mother's request, and Iacovelli's sole intent when entering was to care for any animals in the bedroom.  That entry occurred before any contact between Tillery and Iacovelli, i.e., when the entry occurred, Tillery had no knowledge of it and did not acquiesce to it.  Iacovelli's entry into appellant's bedroom was a private search that did not implicate the Fourth Amendment.  Moreover, just as taking a picture of someone is not a search (cf. *United States v. Emmett* (2003) 321 F.3d 669, 672), Iacovelli's taking of the photographs after he entered appellant's bedroom was not a "search[]" within the meaning of the Fourth Amendment.  (See *Goldberg, supra,* 161 Cal.App.3d at p. 188.)

Further, there was substantial evidence Iacovelli already had taken the photographs by the time Tillery and Iacovelli initially conversed; therefore, the taking of the photographs was not a "search[]" within the meaning of the Fourth Amendment for the additional reason there was no government participation in said taking.

Finally, even if Tillery conducted a warrantless "search[]" within the meaning of the Fourth Amendment when Iacovelli allegedly complied with Tillery's alleged request to take the photographs, Iacovelli already had conducted a private search of the bedroom, and

7

already had invaded appellant's privacy interest in the bedroom, when Iacovelli entered it. "[I]nsofar as the governmental search is nothing more than a reexamination of matter uncovered in a search by a private citizen, it involves no impermissible infringement of a privacy interest." (*Warren, supra,* 219 Cal.App.3d at p. 623.) The trial court properly denied appellant's suppression motion.

Appellant's arguments to the contrary are largely based on ambiguous testimony appellant's trial counsel elicited from Tillery during the preliminary hearing. Even if there was evidence Tillery asked Iacovelli to take the photographs and send them, there was also substantial evidence Tillery did not ask this. The trial court made an express factual finding Tillery did not request Iacovelli to take photographs. We defer to that finding, which is supported by substantial evidence. (*Glaser, supra,* 11 Cal.4th at p. 362.)[4]

2. *The Trial Court Properly Denied Appellant's Motion to Traverse the Search Warrant.*

a. *Pertinent Facts.*

Based on Iacovelli's statements and Tillery's investigation, Tillery obtained a search warrant for appellant's residence. The warrant reflects the magistrate issued it on June 9, 2011. The statement of probable cause supporting the warrant stated, "On June 8, 2011, a witness [Iacovelli] to a 148[] PC (Resisting a Peace Officer) . . . that occurred on June 7, 2011, contacted Foothill Station Sgt. Ojeda . . . and informed him that he observed what appeared to be an assault weapon in the suspect's room." The statement of probable cause later stated Tillery assumed responsibility of the investigation, obtained Iacovelli's phone number, and "[Witness] Iacovelli stated he took pictures of the rifle and would forward them to me. I questioned him as to the characteristics of the firearm he observed and directed him to forward photos he had taken on his phone to me."

---

[4] In light of our analysis, there is no need to reach the issue of whether Iacovelli's observations of the assault weapon before Tillery allegedly asked Iacovelli to take photographs of it provided an independent source of evidence of the weapon, attenuating any taint from Tillery's later alleged warrantless search. Nor is there any need to reach the issue of whether the good faith exception to the warrant requirement applies.

An arrest report attached to the motion to traverse indicates as follows. On June 7, 2011, appellant called police and claimed Iacovelli had assaulted him. Police contacted Iacovelli who claimed he slapped appellant in self-defense. Police explained to appellant and Iacovelli the situation was mutual combat and both could go to jail. As police explained this to appellant, he became uncooperative and refused to provide identifying information, claiming he did not have a last name and did not know what ID or a driver's license was.

Police told appellant to remove his hands from his pockets and he refused. Police saw on appellant's pants what might have been a pocket knife clip, and appellant continued refusing to remove his hands from his pockets. Police advised appellant to turn around and place his hands behind his back. Appellant refused to do so and a struggle ensued before police took him to the ground, removed a knife from his pants pocket, and handcuffed him. Police arrested appellant for resisting arrest, and the arrest report lists Iacovelli as a witness.

On June 11, 2012, appellant filed a motion to traverse the warrant, claiming there were misstatements and omissions in the warrant. The court denied the motion, concluding appellant was complaining about omissions, he had not made a sufficient showing entitling him to a hearing, and even if the omitted statements had been included in the warrant affidavit, it still would have established probable cause to search.

b. *Analysis*.

Appellant claims the trial court erroneously denied his motion to traverse the search warrant. We reject the claim. Appellant argues the supporting statement of probable cause contained "two areas of omission and misleading statements." The first area was Tillery's alleged misleading description of Iacovelli as "a witness to a resisting arrest" when in fact Iacovelli was "the subject of possible charges, as well as involved in a contentious relationship with appellant." The second area was Tillery's omission he "had contacted Iacovelli while he was in appellant's room, and according to [Tillery's] preliminary hearing testimony, asked that [Iacovelli] take photographs and forward them to [Tillery]."

9

"In *Franks v. Delaware* (1978) 438 U.S. 154 [98 S.Ct. 2674], the United States Supreme Court held that a defendant may challenge the veracity of statements contained in an affidavit of probable cause made in support of the issuance of a search warrant. When presented with such a challenge, the lower courts must conduct an evidentiary hearing *if* a defendant makes *a substantial showing* that: (1) the affidavit contains statements that are *deliberately false or were made in reckless disregard of the truth* and (2) the affidavit's remaining contents, after the false statements are excised, are insufficient to justify a finding of probable cause." (*People v. Bradford* (1997) 15 Cal.4th 1229, 1297, italics added.)

"A defendant who challenges a search warrant based on *omissions* in the affidavit bears the burden of showing an *intentional or reckless omission of material* information that, when added to the affidavit, renders it insufficient to support a finding of probable cause." (*People v. Scott* (2011) 52 Cal.4th 452, 484, second italics added.) A defendant must show the affiant omitted the information "with the *deliberate intention to create a false impression or with reckless disregard for the truth*." (*Id.* at p. 485, italics added.) The defendant must make the substantial showing by a preponderance of the evidence. (*Id.* at p. 484.) Absent the requisite substantial showing, a defendant is not entitled to an evidentiary hearing on a motion to traverse, and the motion is properly denied. (Cf. *People v. Benjamin* (1999) 77 Cal.App.4th 264, 267, 277.) We review such a denial de novo. (*People v. Panah* (2005) 35 Cal.4th 395, 457-458.)

Appellant does not argue the statement of probable cause supporting the warrant was facially insufficient, but only that the statement is insufficient in light of the alleged "two areas of omission and misleading statements." However, in light of the pertinent facts, the applicable law concerning the required substantial showing, and our analysis in part 1 of our Discussion rejecting appellant's claim the trial court erroneously denied his suppression motion, we reject appellant's argument the trial court erroneously denied his motion to traverse the search warrant.

## *DISPOSITION*

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KITCHING, J.

We concur:

KLEIN, P. J.

CROSKEY, J.

11