[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14136
_____

D.C. Docket No. 1:17-cr-20256-JLK-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ROBERTO ARTURO PEREZ,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 26, 2019)

Before ROSENBAUM and TJOFLAT, Circuit Judges, and PAULEY III.[*]

PER CURIAM:

_____

[*] Honorable William H. Pauley III, Senior United States District Judge for the Southern District of New York, sitting by designation.

If this were an Encyclopedia Brown mystery, it might be called *The Case of the Polite Bank Robber*.[1]  Without any weapons, Defendant-Appellant Roberto Arturo Perez calmly walked into two different banks.  He handed a teller at each bank a note with instructions using words like "please" and "thank you," made no reference to any type of weapon, bargained pleasantly with one teller for $5,000, and allowed another teller to leave the teller's post and report the robbery while it was ongoing.

Of course, there's no such thing as a good bank robbery.  But from the perspective of the Sentencing Guidelines, there are certainly less bad ones.  All bank robberies charged under 18 U.S.C. § 2113(a) necessarily involve implicit or explicit threats of some type, since they must all occur by "force and violence" or "intimidation" to qualify as bank robberies under that statute.[2]  But the Guidelines more harshly punish defendants who use implicit or explicit threats of death to accomplish bank robberies than those who employ lesser threats in their crimes.

Here, we decide whether the district court clearly erred in concluding that Perez's conduct and choice of language would have instilled in a reasonable person a fear of death, justifying application of the Guidelines' threat-of-death

---

[1] For the uninitiated, the Encyclopedia Brown children's book series, written by Donald J. Sobel, follows the adventures of Leroy Brown (not the Leroy Brown of Jim Croce notoriety). Brown was a fictional, highly intelligent, boy sleuth who solved mysteries.

[2] Bank extortion under § 2113(a) is subject to a different guideline than bank robbery. *Compare* U.S. Sentencing Guidelines Manual § 2B3.2 (extortion), *with* USSG § 2B3.1 (robbery).

2

enhancement. In other words, we must evaluate whether Perez's bank robberies were of the less bad variety, by Guidelines standards. After careful consideration and with the benefit of oral argument, we hold that they were. We therefore vacate Perez's sentence and remand for resentencing.

## I.

### A.    Perez's Bank Robbery and Attempted Bank Robbery

Within the span of a week, Perez committed or tried to commit two bank robberies. We discuss what happened during each one.

First, on about March 21, 2017, Perez entered a Chase Bank. He was wearing a baseball hat, dark sunglasses, a t-shirt, and pants. Perez, who was not carrying a weapon, gave the teller a note that read, "Put $5[,]000 in an envelope. Put the note inside as well. Stay calm. Do this and no one will get hurt. Press the alarm after I walk out. I have kids to feed. Thanks."

In response to receiving this note, the teller explained to Perez that the teller would need to type a code into the computer to dispense any cash. Perez directed the teller to do so. After the teller entered the code, the teller placed $1,000 in cash on top of the counter. Perez took the money and counted it. Then, pointing to his written note seeking $5,000, Perez asked the teller if that was the most cash the teller could dispense. In response, the teller gave Perez another $1,000 and placed it on

3

the counter.  This process occurred three more times, for a total of approximately $5,000.  Perez took that money from the teller's counter and exited the bank.

Six days later, on about March 27, 2017, Perez entered a Wells Fargo Bank. This time, besides his baseball hat, dark sunglasses, and shirt, he wore shorts rather than pants.  Perez again did not carry a weapon.  When Perez approached the bank teller this time, he gave the teller a note that read, "[A]ct normal and stay calm[.] [T]ake 20,000$ [sic] and put it in an envelope and nobody gets hurt[.]  [P]lease sound the alarm in 10 minutes[.]  I got kids to feed[.]  [T]hanks."

In response, the bank teller signaled the bank's alarm system and then simply left the bank counter, entering a back room to inform a supervisor and others of the robbery in progress.  They, of course, dialed 911 to contact law enforcement. Remarkably, after several minutes, the bank teller returned to the counter where Perez, "visibly agitated and aggressive," was waiting.  Perez demanded that the bank teller hurry up.  Nevertheless, the teller stalled Perez until law enforcement arrived and took Perez into custody.

## B.    Procedural History

The United States charged Perez with the robbery of Chase Bank (Count 1) and the attempted robbery of Wells Fargo Bank (Count 2), both in violation of 18 U.S.C. § 2113(a).  Perez pled guilty to both charges without a plea agreement.

Perez's Pre-Sentence Investigation report ("PSI") assigned Perez a combined

adjusted offense level of 23.  As relevant here, that included a two-level enhancement for making threats of death, under USSG § 2B3.1(b)(2)(F) (the "threat-of-death enhancement").  Based on a total offense level of 23 and a criminal-history category of I, Perez's guideline range was 46 to 57 months' imprisonment.

Perez filed an objection to the two-level threat-of-death enhancement.  He then renewed that objection at sentencing.  In summary, Perez contended, as he does on appeal, that the threat-of-death enhancement applies only when some additional conduct or language aggravates a mere threat of harm, inherent in every robbery, to a threat of death.  And because Perez did not engage in such conduct or language, he asserted, the enhancement did not apply.

The district court disagreed.  It first lamented that the parties failed to present any factual evidence about Perez's offenses but instead relied on the PSI's undisputed facts (which we have recited above).  Looking to those facts, the district court characterized Perez as having had "sort of a conversation . . . or [a] back-and-forth" with the teller in the first robbery.  As to the second, the district court recognized that the note "has a sense of overall threatening and, yet, it has a blandness to it . . . a plea for help for his kids[.]"  [The district court opined that "there [was] an element, certainly, of fear in the matter . . . that will put somebody in concern about harm," regardless of the absence weapons or threatening non-verbal cues.  "On this basis," the district court concluded that a reasonable person "could

5

have been in sufficient fear to warrant" application of the threat-of-death enhancement, as recommended in the PSI. So it overruled Perez's objection. Nevertheless, the court sentenced Perez to 46 months' imprisonment, the low end of the threat-of-death-enhanced guideline range, because it determined that Perez's threats were less severe than others that qualify for the enhancement.

The district court later entered judgment, and Perez timely appealed.

## C.    This Appeal[3]

On appeal, Perez claims that his sentence should be vacated and the case remanded for resentencing for two reasons. First, Perez argues that the district court applied the wrong legal standard. According to Perez, the district court imposed the threat-of-death enhancement based upon a lower finding than necessary. Specifically, Perez contends that the district court found only that Perez's threats would have placed a reasonable person in fear of "danger" or "harm," which is inherent in every bank robbery under § 2113(a) but which, without more, cannot suffice to sustain the threat-of-death enhancement. Second, Perez argues that even if the district court applied the correct legal standard, it erred by finding the facts of this case warrant the imposition of the threat-of-death enhancement.

The government agrees.

---

[3] We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Nevertheless, we have an independent duty to decide the matter before us according to law.  And the parties' agreement about or stipulation to a particular view of the law does not absolve us of that duty.  *See United States v. Linville*, 228 F.3d 1330, 1331 (11th Cir. 2000) ("We are not required to accept such a concession [from the government] when the law and record do not justify it."); *see also United States v. Mankiewicz*, 122 F.3d 399, 402-03 (7th Cir. 1997) (discussing district court's independent duty to determine legal question regardless of parties' agreement).  For that reason, a judge of this Court appointed an amicus lawyer to defend the district court's judgment.[4]

## II.

We review the district court's application of the Sentencing Guidelines *de novo*.  *United States v. George*, 872 F.3d 1197, 1204 n.6 (11th Cir. 2017); *United States v. Murphy*, 306 F.3d 1087, 1089 (11th Cir. 2002).  That entails a *de novo* review of the legal standard, a clear-error review of the district court's findings of fact, and a *de novo* review of the district court's application of the legal standard and the Sentencing Guidelines to those facts.  *George*, 872 F.3d at 1204 n.6.

## III.

---

[4] We thank Alissa del Riego of Podhurst Orseck, P.A., for accepting the appointment and for her very able service during this appeal.

7

As we have noted, Perez first contends that the district court applied the wrong legal standard in evaluating whether his conduct qualifies for the threat-of-death enhancement. We do not opine on this issue because even if the district court applied the correct standard and determined that Perez engaged in conduct that would have put a reasonable person in fear of death (and not just harm or danger), we still must vacate the sentence and remand for resentencing. Whether we view the district court's determination as a clearly erroneous factual finding or an incorrect application of the Guidelines to the facts, the district court reversibly erred in imposing the enhancement.

In explaining why, we begin our analysis with a brief review of the crime of bank robbery under 18 U.S.C. § 2113(a). A defendant is guilty of bank robbery (or attempted bank robbery) if he takes or attempts to take money from a bank "by force and violence, or by intimidation." 18 U.S.C. § 2113(a). Delineating between bad robberies and worse robberies, USSG § 2B3.1(b) sets forth sentencing enhancements that account for how the defendant undertook the robbery at issue. As relevant here, that section imposes a two-level enhancement when the defendant makes a "threat of death" during the robbery. *Id.* § 2B3.1(b)(2)(F). It applies when the defendant's conduct "instill[s] in a reasonable person, who is a victim of the offense, a fear of death." *Id.* at cmt. 6. A "threat of death" "may be in the form of an oral or written statement, act, gesture, or combination thereof." *Id.* The defendant

need not expressly threaten the victim with death for the enhancement to apply; an implied threat of death equally suffices. *Id.*

Because the enhancement looks to the reaction of a reasonable person, we apply an objective test to determine whether a defendant's conduct qualifies for the enhancement. *See United States v. Raszkiewicz*, 169 F.3d 459, 468 (7th Cir. 1999). So we consider whether the defendant's overall conduct would have instilled the fear of death in a reasonable person. *See United States v. Wooten*, 689 F.3d 570, 575 (6th Cir. 2012); *United States v. Emmett*, 321 F.3d 669, 673 (7th Cir. 2003). Whether the defendant intended to threaten death is not determinative. *Murphy*, 306 F.3d at 1089 n.1. Similarly, the actual victim's subjective fear is not dispositive, though it may be indicative of whether a reasonable person would have feared death based on the defendant's conduct. *Wooten*, 689 F.3d at 576-77.

The commentary to the Guidelines also directs courts to account for not just what the defendant said (or wrote), but also what the defendant did or did not do during the robbery. While express threats of death are clearly sufficient to justify application of the enhancement, *see, e.g.*, USSG § 2B3.1 cmt. 6 ("Give me the money or I will kill you."), threats of harm plus something more may also qualify for the enhancement. For example, if the defendant specifically threatened that he would do harm by using a deadly weapon—"Give me the money or I will pull the pin on the grenade I have in my pocket"—imposition of the enhancement might be

warranted. *Id.* So too if the defendant threatened a specific harm that frequently or logically might result in death: "Give me the money or I will shoot you." *Id.* Imposition of the enhancement may also be appropriate if a defendant's nonverbal conduct implied noncompliance will result in death: "Give me your money or else (where the defendant dr[ew] his hand across his throat in a slashing motion)[.]" *Id.*

Our case law and that of our sister Circuits demonstrates how courts apply these considerations. In *Murphy*, for instance, we held that a note the defendant gave the teller made a threat of death. 306 F.3d at 1089-90. The note read, "You have ten seconds to hand me all the money in your top drawer. I have a gun. Give me the note back now." *Id.* at 1089. That threat qualified for the enhancement because a reasonable teller "would reasonably have this reaction [to it]: 'If I do not give this robber money within ten seconds, I will be shot; and people who are shot often die.'" *Id.*

Similarly, the Second Circuit, in *United States v. Jennette,* concluded that the defendant's demand for money and follow-up statement that he had a gun was equivalent to the Guidelines' model statement, "Give me the money or I will shoot you." 295 F.3d 290, 291-92 (2d Cir. 2002); *see also United States v. Carbaugh*, 141 F.3d 791, 792, 794-95 (7th Cir. 1998) (holding "This is a robbery. Put the money in the bag. I have a gun." involved a death threat).

10

And in *Raszkiewicz*, the Seventh Circuit held that a menacing gesture alone was enough to find a threat of death. 169 F.3d at 468-69. In particular, the defendant there entered a bank and told a teller, "This is it for you, you're being robbed." 169 F.3d at 461. The defendant ordered another teller to lie on the floor, "pointing toward him with some sort of unknown object in one hand and gesturing with the other hand stuck in the pocket of his . . . jacket in a manner that made [the employee] think that [the defendant] had a gun, although in fact he was unarmed." *Id.* The Seventh Circuit applied a fact-specific, contextual inquiry that accounted for the defendant's threatening conduct but also considered whether the "circumstances [ ] as a whole deprive[d] the [defendant's] words or gestures of their ordinary and customary meaning." *Id.* It concluded that the defendant's conduct would have led a reasonable person to believe that the defendant was "brandishing a weapon" and that, in combination with the defendant's other conduct, would have "generated the additional level of fear associated with a threat of death." *Id.* at 469; *see also Emmett*, 321 F.3d at 673 (concluding enhancement warranted where defendant handed tellers notes threatening that people would be harmed and suggested, by putting his hand into his jacket, that he had a weapon).

The bank robberies in each of these cases involved at least the implication that the defendant possessed a deadly weapon. Nevertheless, while a bank robber who implies he has a deadly weapon will often be found to have engaged in a threat of

11

death, at least one court has determined that even such an implication is not always enough in the highly contextual analysis § 2B3.1(b)(2)(F) demands.

Specifically, in *Wooten*, the Sixth Circuit held that an enhancement was not warranted, even though the defendant told the teller, "I'm going to rob you" and "I have a gun, I want your money." *Wooten*, 689 F.3d at 573, 579. The Sixth Circuit reached this conclusion because it determined that the other circumstances of the robbery undermined the conclusion that the defendant's threat would instill a fear of death in the reasonable victim. *Id.* at 578-79. First, it reasoned that the defendant's nonaggressive and nonthreatening demeanor would not convey to a reasonable teller that the defendant was prepared to use deadly force. *Id.* Second, it noted the amateurish nature of the robbery—including the absence of a disguise or a demand note and the defendant's repeated non-assertive requests for money. *Id.* at 579. Third, corroborating the Sixth Circuit's view of how a reasonable person would have felt in light of the circumstances, the teller himself testified that he never felt threatened by the defendant and merely handed over the money because that's what he was trained to do. *Id.* Indeed, the *Wooten* defendant's previous attempt to commit a bank robbery proved unsuccessful because the teller "laughed at" the defendant's request for money. *Id.* at 573. As the Sixth Circuit concluded, that reaction further supported the conclusion that a reasonable teller likewise would have lacked fear of death during the later robbery. *Id.* at 579.

12

Perez's case does not require us to determine whether we agree with the Sixth Circuit's conclusion that a note expressly advising that the defendant has a deadly weapon will not necessarily satisfy the requirements of the threat-of-death enhancement. Nevertheless, it further demonstrates what the cases from the other Circuits show: "[C]ontext can be everything . . . ." *United States v. Thomas*, 327 F.3d 253, 256 (3d Cir. 2003).

Perez's case does not involve materially the same facts as any of these other cases we have discussed. Unlike in *Murphy*, *Jennette*, *Carbaugh*, and *Wooten*, Perez did not specifically state he had a gun. Nor did Perez imply that he had a weapon, as occurred in *Raszkiewicz* and *Emmett*. On the other hand, Perez did expressly threaten the tellers with harm. So while these other cases might set forth helpful road marks, we must still undertake the fact-intensive inquiry that considers the totality of the circumstances of Perez's threat.

Those circumstances, as we explain next, do not add the "something more" required to transform Perez's general threat of harm inherent in every bank robbery under § 2113(a) into a threat of death. To the contrary, the evidence suggests that Perez's overall conduct would have somewhat mitigated a reasonable victim's fear of harm.

We begin with Perez's March 21, 2017, robbery of Chase Bank. Perez's demand note told the teller to "Put $5[,]000 in an envelope . . . and no one will get

hurt." That undeniably constitutes a threat of harm. But nothing else about Perez's March 21st robbery generated the additional level of fear associated with a threat of death. Perez did not wear a disguise, and the clothes he did wear did not independently suggest he could have had a weapon hidden in them. Nor did the government present any evidence that Perez made any threatening gestures, nonverbally indicated that he carried a weapon, or acted menacingly. And his statement that he had "kids to feed" also likely softened the impact of the demand, as it suggested that he was not devoid of empathy.[5] Plus, nothing supports the notion that Perez aggressively demanded the money. In fact, the district court described Perez's interaction with the teller as "sort of a conversation." And though the teller easily could have given Perez $5,000 the first time he asked for it, the teller nonetheless felt comfortable enough not to comply with Perez's demand *four* separate times. This is not the conduct of someone in fear of death.

The story is much the same for Perez's March 27, 2017, attempted robbery. Again, we have no doubt that Perez's note constituted a threat of harm. But as was the case with Perez's earlier robbery, nothing about Perez's conduct threatened death. Perez again wore no disguise and was not obviously carrying a weapon. In fact, he was wearing shorts this time, leaving even less room for stowing a weapon.

---

[5] As it turned out, Perez had no children. But of course, a teller would not have known that.

14

And in the demand note, Perez again made reference to a need to feed his kids. This time, the teller felt safe enough to altogether leave the bank counter for several minutes and report the robbery to a supervisor, who called 911. Then, even more surprisingly, the teller returned to the counter. Though Perez was "visibly agitated and aggressive" upon the teller's return, the teller couldn't have found Perez's conduct that imposing. After all, the teller opted not to comply with Perez's demands but rather stalled Perez until law enforcement arrived.

While we apply an objective test in analyzing Perez's behavior, both tellers' responses to Perez provide helpful indications of just how fear-inducing (or not) Perez's threats would have been to a reasonable person. And as the tellers' reactions to Perez suggest, in context, Perez's threats necessary to make his crime qualify as bank robbery, in violation of § 2113(a), did not rise to the further level of threats that would instill the fear of death in a reasonable person.

In short, whether the district court's application of the threat-of-death enhancement here arose from a clearly erroneous factual finding or a legal error in applying the law to the facts, our review of the totality of the circumstances "leaves us with the definite and firm conviction," *United States v. White*, 335 F.3d 1314, 1319 (11th Cir. 2003), that the district court reversibly erred.

Amicus contends our decision in *United States v. Keene*, 470 F.3d 1347, 1348 (11th Cir. 2006), requires a different answer. We are not persuaded. In *Keene*, the

15

bank robber gave the teller a note reading, "Give me all the money, and no one will get hurt!  Love, me."  Though we cited the Third Circuit's *Thomas* decision and mused in dicta that perhaps we should conclude that the threat-of-death enhancement applied, we ultimately did not reach the issue because the district court said it would have applied the same sentence, regardless of whether the enhancement applied.  *Id.* at 1348-49.  As a result, *Keene* is not instructive here.

And to the extent that *Keene*'s dicta could be understood to suggest that a threat of harm alone—without consideration of the surrounding circumstances—might suffice to support application of the threat-of-death enhancement, it cannot be sustained for at least two reasons.

First, since all bank robberies involve threats of harm of some type in order to qualify as robberies under § 2113(a), a rule subjecting generic threats of harm, without more, to the threat-of-death enhancement would effectively render the threat-of-death enhancement applicable to every bank robbery under § 2113(a).  If the Guidelines' drafters wished to make that choice, they would have done so expressly, like they did when they made a two-point enhancement applicable to all bank robberies, just because they are bank robberies.  *See* USSG § 2B3.1(b)(1).

Second, *Thomas*, the case we cited in our dicta in *Keene*, does not stand for the proposition that a generic threat of harm, standing alone, can support application of the threat-of-death enhancement.  In *Thomas*, the defendant presented a demand

note that, as relevant here, stated, "a dye pack will bring me back for your ass." 327 F.3d at 254. In other words, the note threatened that the teller would not be safe even after the robbery if the teller put a dye pack in with the money, since the defendant would hunt the teller down and exact his revenge. The Third Circuit opined that "[w]hether Thomas's threat was a threat of death or only a threat of harm is not free from doubt." *Id.* at 257. But it nonetheless upheld the district court's application of the enhancement on clear-error review. *Id.*

Of course, very important differences exist between the threat in *Thomas* and the threat in *Keene*. While the note in *Keene* threatened only generic harm, the note in *Thomas* involved a specific threat to come "back for your ass." So unlike the *Keene* threat, the *Thomas* threat, in and of itself, could be understood by a reasonable person as a slang threat of death. Second, unlike the threat in *Thomas*, the *Keene* threat did not suggest that the robber would track down the tellers after the robbery if he turned out to be unhappy with them. The *Thomas* note's inherent threat of revenge represented a threat that continued even after the robbery concluded. Finally, we note that the Third Circuit upheld application of the enhancement in *Thomas* only because it determined the application to be nothing more than a factual determination that was not clearly erroneous. While we also, of course, review factual findings for clear error, we apply a *de novo* standard of review in evaluating application of the Guidelines, as a matter of law, to the facts. For these reasons,

17

*Thomas* itself does not support application of the threat-of-death enhancement to generic threats of harm in the absence of other circumstances supporting the notion that the threats would put a reasonable person in fear of death.

Finally, we emphasize that § 2B3.1 is designed to distinguish between bank robberies involving threats of harm and those relying on threats of death. As we have noted, by definition, all bank robberies under 18 U.S.C. § 2113(a) employ threats of some kind of harm, or they would not satisfy the statutory requirement that the defendant have used "force and violence" or "intimidation." Section 2B3.1(b)(F) pertains to only those robberies where the defendant relied on a threat of death. Perez's robberies involved no such threat.

## IV.

"Treating all threats in the course of a robbery as threats of death would defeat the distinction the [threat-of-death] enhancement seeks to capture." *Thomas*, 327 F.3d at 257. We decline to effectively do away with § 2B3.1(B)(2)(F)'s distinction that helps separate bad robberies from worse ones. Here, it is clear that Perez's conduct and language did not rise to the level of a threat of death. Because the district court erred in reaching the contrary conclusion, we vacate Perez's sentence and remand to the district court for resentencing.

**VACATED AND REMANDED.**

18