[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13741
Non-Argument Calendar
_____

D.C. Docket No. 2:19-cr-00108-LSC-GMB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CORDERREL DEWAYNE POOLE,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 24, 2020)

Before GRANT, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Corderrel Poole appeals his conviction for carjacking in violation of 18

U.S.C. § 2119 and his 105-month sentence for the same crime.  On appeal, he

argues that the district court erred in excluding his justification defense; he thinks

that the court should have let him explain to a jury that he stole the car to escape

men who had been following and threatening him for months.  He also objects to

the district court's two-level enhancement to his sentence for making a "threat of

death" under section 2B3.1 of the United States Sentencing Guidelines; he claims

that any threat he made is inherent in any carjacking.  We disagree with both of his

arguments, and therefore affirm his conviction and sentence.

I.

On the evening of November 5, 2018, the victim in this case was inside a

Publix Supermarket in Homewood, Alabama.  While she was inside, Corderrel

Poole crouched on the ground behind a car parked close to hers in the parking lot.

She finished shopping and returned to her car.  Poole then "jumped out" and ran

towards her.  She quickly shut her door, started the engine, and began backing out

of her parking space.

Poole reached her car and began banging on her window.  Though he yelled

repeatedly at her to get out of the car, she continued to try to drive away.  Poole

then reached into her car and grabbed her arm in an attempt to pull her out of the

moving vehicle.  But still she kept driving.

In a final act of desperation, Poole reached into the shoulder bag he was

carrying and, in his own words, "acted as if he was going to pull out a gun."  That

did the trick.  Afraid of being shot, the victim fell out of the moving car and onto

the ground.  Poole took her place in the driver's seat and drove away.  He headed east towards Atlanta but eventually wrecked her vehicle, leading to his apprehension and arrest.

A federal grand jury indicted him for one count of carjacking in violation of 18 U.S.C. § 2119.  After Poole made clear that he wished to present a justification defense at trial, the government filed a motion in limine to exclude that defense.  The government argued that Poole could not establish that he was under an immediate threat of death or serious bodily injury or that he had no reasonable legal alternatives—two elements necessary to make out a justification defense.  The district court held a hearing on the motion outside of the presence of the jury to determine whether Poole could proffer evidence to satisfy each element of the defense.

Poole testified at that hearing.  According to Poole, the events at issue began two months before the carjacking when he witnessed the murder of a close friend.  Poole gave a statement to the police after the murder—a statement he thinks was crucial in the eventual apprehension of the murderer.  He then began receiving threats.  Poole had various run-ins with unknown people who threatened him not to return to the area of town where the murder occurred; he was even shot at a few

times.  He says he was followed multiple times during the two months after the murder.

He related one instance where he was in a convenience store in the area where the murder occurred when several men surrounded the store and were "trying to draw their guns" on him.  With the aid of police, Poole was able to leave the store.  The police gave him a ride to a local homeless shelter.

Fast forward to the day of the carjacking.  According to Poole, he had been staying at a homeless shelter for a few weeks.  As he was standing outside the shelter in the afternoon, two men approached.  One was a family member of the person charged with the murder of Poole's friend.  The men tried to convince Poole to walk somewhere with them, but he refused and returned inside the shelter.

The men followed him in, keeping an eye on him as he ate lunch.  Poole realized they were watching him and left the shelter.  The men followed him out, so Poole quickly began walking away from the area.  He stopped at a nearby temporary employment agency, a service station, and a Walmart; the men followed him most of the way.  At one point, he passed the Birmingham Police Administrative Building but decided not to go in.  He testified that he didn't think

4

the police could help him because they had told him before that they wouldn't do anything about the threats until something happened.

He ended up outside the entrance to the Publix, where he stayed for about an hour. When he headed towards the parking lot's exit to leave, he saw the two men from before about thirty feet away. Poole "didn't know where to go" and felt "like they were closing in," so he decided to sit on the ground behind a parked car—and that's when he saw the victim heading towards her SUV. Poole testified that he "didn't know what else to do" and thought the police "couldn't protect" him, so he banged on the victim's car's window to ask for help. Poole didn't explain how he went from asking the victim for help to driving her car away.

After Poole took the car, he headed towards Atlanta. But Poole noticed a car following him on the interstate. That car followed him for a while before bumping into him and causing him to wreck. The wreck led to Poole's arrest.

After hearing this testimony, the district court ruled in favor of the government. It found that Poole did not demonstrate a "present, imminent, and impending threat of death or serious bodily harm" at the time of the carjacking; though he might have been trying to escape a general threat from "the community as a whole," there was no immediate threat to his safety when he stole the victim's car. It also found that Poole failed to show that he had no "reasonable legal alternative" to exercise before stealing the car. Because he could not proffer

evidence to support these two elements of his defense, he could not present his justification theory to a jury.

With this defense off the table, Poole elected to plead guilty to one count of carjacking. He preserved his right to appeal the district court's ruling on his justification defense and entered a written factual stipulation concerning the carjacking. That stipulation stated, among other things, that Poole "repeatedly banged on" the victim's window and "yelled at her to 'get out' with his face very close to hers." When she refused to give up her vehicle, he "reached into the shoulder bag he was carrying and acted as if he was going to pull out a gun. Believing that she was about to be shot," the victim "attempted to get out of the vehicle, falling while the car was moving." Poole "took her place in the driver's seat" and "drove away."

The district court accepted his guilty plea, and the probation office prepared a presentence investigation report. That report assessed Poole a two-level sentencing enhancement under U.S.S.G § 2B3.1(b)(2)(F) for making a "threat of death" during the carjacking. Based on his total offense level of 22 and criminal history category of VI, Poole's Sentencing Guideline range was 84 to 105 months in prison.

Poole objected to the two-level enhancement and argued that his actions did not constitute a "threat of death." The district court disagreed. It noted that the

6

victim continuously refused to give in to Poole's demands, but once he reached into his bag as if he was pulling out a gun, she became so frightened that she fell out of her moving vehicle.  Her decision to put herself in that dangerous situation demonstrated to the court "how real she thought the threat was."  It also stated that its ruling on the objection was irrelevant; it planned to give Poole the same sentence either way because of his prior convictions, character, and continued criminal conduct.

The district court then adopted the factual statements from the presentence investigation report and sentenced Poole to 105 months in prison.  This appeal followed.

## II.

We review a district court's decision prohibiting a defendant from raising an affirmative defense de novo.  *United States v. Thompson*, 25 F.3d 1558, 1563 (11th Cir. 1994).  Before an affirmative defense can go to the jury, the defendant must proffer enough facts to support each element of the defense.  *United States v. Montgomery*, 772 F.2d 733, 736 (11th Cir. 1985).  To make out a justification defense, Poole needed to prove that 1) he was under unlawful and present, imminent, and impending threat of death or serious bodily injury; 2) he did not negligently or recklessly place himself in the situation where he was forced to engage in criminal conduct; 3) he had no reasonable legal alternative; and 4) there

7

was a direct causal relationship between his criminal action and the avoidance of harm. *United States v. Deleveaux*, 205 F.3d 1292, 1297 (11th Cir. 2000). The defense is available only in "extraordinary circumstances." *Id.*

The first prong of this defense requires "nothing less than an immediate emergency." *United States v. Bell*, 214 F.3d 1299, 1300 (11th Cir. 2000). In *United States v. Rice*, for example, the defendant had endured a months-long campaign of abuse by gang members—he was beaten and robbed twice, assaulted three other times, and subjected to several attempted attacks. 214 F.3d 1295, 1297–98 (11th Cir. 2000). The day of his arrest, he was threatened by the gang members and went home to grab a gun for protection. *Id.* at 1298. He was later arrested for being a felon in possession of a firearm. *Id.* We held that because the gang was nowhere to be seen at the time of his arrest, there was no "immediate emergency" to establish a justification defense for possessing a firearm; his generalized fear of danger was not enough. *Id.* at 1298–99.

So too here; Poole failed to show that he was under a "present, imminent, and impending threat of death or serious bodily injury" at the time he stole the car. *Deleveaux*, 205 F.3d at 1297. Though he claims to have been followed and confronted by the men watching him in the Publix parking lot, those men were thirty feet away at the time of the carjacking. They had not indicated that they had weapons. And they had not made any threat of death or serious bodily injury to

8

Poole. He may have been shot at and threatened *in the past*, but that is not an immediate emergency sufficient to justify forcibly taking someone's vehicle *in the present*. *Rice*, 214 F.3d at 1298. At most, these men purposely followed Poole the day of the carjacking and caused him to have a generalized fear of what might happen—but a generalized fear is not a "present, imminent, and impending threat of death or serious bodily injury" that can make out a justification defense.

Even if Poole were in imminent danger of serious bodily harm, he failed to show that he had "no reasonable legal alternative to violating the law." *Deleveaux*, 205 F.3d at 1297. Indeed, his story is replete with lawful opportunities to seek help. To begin, he was first approached at a homeless shelter he had been staying at for weeks—but he chose not to ask anyone at the shelter for help. He testified that, after leaving the shelter, he passed a library, a school, multiple churches, a restaurant, a college, and a Walmart. He did not stop at any of those places to ask for help. He even passed a police building, but kept walking. To make matters worse, he was standing in front of the entrance to a public supermarket right before the carjacking. He could have gone inside to ask for help or to call the police, but instead he decided to steal a vehicle.

Poole argues that none of these opportunities to seek help were "reasonable." Given his past experiences with the police, he says, it was reasonable for him to think they could offer little or no assistance. We disagree.

9

For one, Poole had previously received a card from a detective who worked in the Birmingham Police Department building; that detective had told him to call if he ever needed help.  In addition, police had previously helped Poole when he was "surrounded" in the convenience store; they came to the store, helped him exit, and even gave him a ride to a local shelter.  Even if he was disheartened by what he perceived to be a lack of assistance during the two months after the murder, Poole cannot establish that his "unique situation" made his numerous opportunities to seek help unreasonable.  Because he had a range of reasonable and legal alternatives at his disposal, he cannot justify the carjacking.

Poole also argues, for the first time on appeal, that he had a "constitutional right" to present his defense even if he failed to prove each element by a preponderance of the evidence.  But Poole waived this argument by not raising it in the district court.  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  And even if he had, the Constitution does not mandate that a court allow each and every theory a defendant wishes to raise, no matter how improbable, get to the jury.  Instead, a court can require a defendant asserting an affirmative defense that does not negate any element of the charged offense to first prove that defense by a preponderance of the evidence.  *Patterson v. New York*, 432 U.S. 197, 210–11 (1977).  The district court acted properly here in requiring Poole to proffer evidence sufficient to prove each element of his justification

defense.  And for all the reasons given above, it did not err in prohibiting him from presenting the defense to a jury.

### III.

In reviewing a sentence, we review the district court's factual findings for clear error and its interpretation and application of the Sentencing Guidelines de novo.  *United States v. Shabazz*, 887 F.3d 1204, 1222 (11th Cir. 2018).  The Sentencing Guidelines provide for a two-level enhancement where a defendant makes a "threat of death" during a robbery, including a carjacking.  U.S.S.G. § 2B3.1(b)(2)(F).  That threat can be oral, written, an act, a gesture, or a combination thereof.  U.S.S.G. § 2B3.1, cmt. n.6.  The defendant need not expressly state an intent to kill the victim; the "impact of his message" is what matters.  *United States v. Murphy*, 306 F.3d 1087, 1089 n.1 (11th Cir. 2002).  A victim's subjective fear, though not dispositive, is "indicative of whether a reasonable person would have feared death."  *United States v. Perez*, 943 F.3d 1329, 1333 (11th Cir. 2019).

Though Poole admits that he reached into his bag before taking the car—in fact, he signed a factual basis stating that he "acted as if he was going to pull out a

11

gun" when making the gesture—he argues that his conduct would not instill a fear of death in a reasonable person. His arguments are unavailing.

Prior to reaching into his bag, Poole ran to the victim's car, banged on her car window, and repeatedly yelled at her to get out. He had grabbed her arm and attempted to forcibly pull her out of her moving vehicle. When it became apparent that she would not give in to his demands, Poole had reached into a bag he was carrying—a big enough to store a weapon—and gestured as if he was pulling out a gun. In those circumstances, a reasonable person would fear death.

Though not dispositive, how this victim responded sheds light on how a reasonable person would perceive Poole's actions. *Id.* And here, the victim immediately attempted to get out of her car after Poole gestured at his bag, despite refusing to do so until that point. In fact, she was so frightened by his gesture that she fell out of her car while it was still moving. Though we know that Poole was only feigning possession of a gun, a reasonable victim would not. *Murphy*, 306 F.3d at 1089 n.1. Poole's conduct would instill "a fear of death" in a reasonable person.

Poole argues that *United States v. Perez* mandates a different outcome. In that case, a defendant we called the "Polite Bank Robber" robbed two different banks by calmly handing tellers a note that used words like "please" and "thank you" to ask for cash. *Perez*, 943 F.3d at 1330. The robber did not imply that he

12

had a weapon, bargained pleasantly with one teller for $5,000, and allowed another teller to report the robbery while still ongoing. *Id.* We held that the district court clearly erred in concluding that the robber's conduct and language would instill a fear of death in a reasonable person. *Id.* at 1337. We noted that any conceivable threat the polite bank robber posed was inherent in every robbery. *Id.*

Poole attempts to analogize his case to *Perez*, arguing that any threats he made are inherent in every carjacking and do not warrant a sentencing enhancement. But Poole was no "Polite Carjacker"—he banged on the car window, repeatedly yelled at the victim to get out, forcibly attempted to grab her, and (most importantly) reached into his bag as if he had a weapon. Though carjacking is never a happy event for the victim, there are surely less threatening means to accomplish a carjacking than those Poole employed. His conduct was enough to imply to a reasonable victim that failure to surrender would result in death. *Id.* And for that reason, the district court did not err in applying the two-level sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(F).

*     *     *

Accordingly, we **AFFIRM** Poole's conviction and 105-month sentence.

13