[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10404

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LATAVIS DEYONTA MACKROY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cr-00087-PGB-LHP-1

_____

Before WILLIAM PRYOR, Chief Judge, and BRANCH and ANDERSON, Circuit Judges.

PER CURIAM:

Latavis Mackroy appeals his convictions and sentence for bank robbery and attempted bank robbery. 18 U.S.C. § 2113(a). Mackroy challenges the admission of testimony concerning two interviews and the denial of his motion for a judgment of acquittal. He also argues that the district court erred in applying an enhancement for a threat of death, imposed a substantively unreasonable sentence based on an upward variance, and erred by imposing conditions of supervised release not orally pronounced at sentencing. We affirm.

## I. BACKGROUND

A superseding indictment charged Mackroy with robbery of Fairwinds Credit Union, Chase Bank, and TD Bank and attempted robbery of Regions Bank. 18 U.S.C. § 2113(a). Before trial, the government provided notice under Federal Rule of Evidence 404(b) that it would introduce evidence of Mackroy's prior robbery conviction for which he was serving his sentence at a halfway house because it was inextricably intertwined with the charged offense and was relevant to his identity.

At trial, the tellers from each bank testified that a man handed them a note stating it was a robbery and took the money they gave him. The teller at TD Bank testified that the robber left the note behind, and the teller at Regions Bank testified that the

robber left without the money when the teller went to inform his boss about the robbery. Each teller testified that deposits at the bank were insured by the National Credit Union Association or the Federal Deposit Insurance Corporation. And the government introduced a picture of each bank from the day of each robbery with signs stating the bank was insured. Gina Nava, the teller at Chase Bank, testified that a man approached her and handed her a note that stated, "This is a robbery. Don't try to protect what's not yours." She also remembered reading the word "gun." She stated that the robber left one of his hands in his sweater, which scared her because she believed he had a weapon.

Pamala Woehr, a latent fingerprint examination expert, testified that four prints on the note from TD Bank matched Mackroy's fingerprints. Jimmy Jones, who worked for a halfway house where Mackroy was serving a sentence with the Bureau of Prisons at the time of the robberies, testified that records showed that Mackroy was signed out of the facility when each robbery occurred. Detective Ronald Budde testified that Mackroy's car was a short distance from TD Bank before the alarm activated for the robbery. Detective Stephen White testified that Mackroy's cell phone was used to search for banks the day of one of the robberies and for news stories about the robberies. Agent Timothy Pent testified that cell-phone data placed Mackroy's phone close to the relevant banks at the time each was robbed.

FBI Special Agent Jonathan Hannigan testified that he investigated the robberies. He noted similarities between Mackroy and

the robber from video recordings of the robberies, including his hair, tattoos, complexion, clothing, and hair wrap. Hannigan questioned Mackroy at the halfway house after advising him of his rights. Mackroy did not admit to being involved in the robberies, but he asked to speak with an assistant United States attorney "in order to broker some sort of deal," and later asked to speak with FBI Special Agent Kevin Kaufman. After reinforming Mackroy of his rights, Hannigan and Kaufman conducted another interview.

Kaufman testified that he knew Mackroy because he had previously investigated him for Hobbs Act robbery. The government moved to introduce the interview recording and transcript into evidence. Mackroy objected to playing portions of the interview, but the district court overruled his objection.

In the interview, Kaufman informed Mackroy that the prosecution had DNA and fingerprint evidence connecting him to the banks. Kaufman also made several comments regarding Mackroy's previous conviction, including that he had received a 15-year sentence and that he had not "even started federal probation and [was] out committing federal crimes," "didn't learn his lesson" because he was "still doing bank robberies," and was "back doing this sh*t." When discussing an unsolved homicide Mackroy had information about, Kaufman stated they would not be able to trust Mackroy to obtain information when he was committing other crimes while living in a halfway house and that letting Mackroy meet with potential suspects would "put[] the public at risk."

Kaufman explained at trial that he wanted to obtain truthful information about the instant robbery before Mackroy relayed information about other crimes, such as the unsolved homicide, but Mackroy refused to provide information about the instant offense. Kaufman stated that Mackroy did not deny he committed the offense because if he lied, the agents would not be able to trust him. Kaufman stated that it would not be realistic for someone to cooperate with the FBI and not plead guilty. Kaufman also testified that Mackroy did not deny committing the robberies when shown pictures because "he did it," that Mackroy smiled or smirked in response to being shown an image of the bank robber because he "knew he was caught, that that was him in the picture," and that Mackroy's demeanor during the interview "did not resemble a person that was innocent."

The government rested. Mackroy moved for a judgment of acquittal arguing that the evidence did not establish his guilt beyond a reasonable doubt. The district court denied the motion. The jury found Mackroy guilty on all four counts. Mackroy moved for a new trial arguing that there was insufficient evidence the banks were federally insured, which the district court denied.

Mackroy's final presentence investigation report reported a base offense level of 20, United States Sentencing Guidelines Manual § 2B3.1(a) (Nov. 2021), a 2-level enhancement because the targeted victim was a financial institution, *id.* § 2B3.1(b)(1), a 2-level enhancement because the note given to Nava at Chase Bank included a threat of death by referring to a gun, *id.* § 2B3.1(b)(2)(F), a

2-level enhancement for obstruction of justice for denying under oath that he was the individual in the video of the Regions Bank robbery, *id.* § 3C1.1, and a 4-level multiple count adjustment because the offenses were counted separately as they involved harm to separate victims, *id.* §§ 3D1.2(a)-(d), 3D1.4, resulting in a total offense level of 30. The report listed Mackroy's juvenile adjudications for aggravated assault with a firearm, resisting an officer without violence, battery, battery on a school employee, and carrying a concealed firearm, for which he did not receive any criminal history points. It also listed a prior conviction for interfering with commerce by robbery. It described multiple violations of probation for juvenile and adult offenses and disciplinary sanctions while in prison. It added two criminal-history points because he committed the instant offenses while serving his sentence for interfering with commerce by robbery. The report calculated a total of nine criminal-history points and a criminal-history category of IV. Mackroy's guideline range was 135 to 168 months and the maximum term of imprisonment as to each of his convictions was 240 months.

The report mentioned factors warranting a sentence outside the guideline range, including Mackroy's difficult upbringing in foster care, lack of parental guidance, and history of substance abuse and mental health problems as possibly warranting a lower sentence. The report also mentioned Mackroy's previous violations of probationary terms, history of substance abuse and mental health problems, and that he was serving a sentence when he committed the instant offenses as possibly warranting a higher sentence.

Mackroy objected to the enhancement for a threat of death and requested a downward variance based on his difficult upbringing and youthful incarceration. The government requested an upward variance of consecutive sentences totaling 25 years of imprisonment because the guideline range did not adequately reflect the seriousness of the series of robberies and his criminal history.

At the sentencing hearing, Mackroy argued against the enhancement for a threat of death on the ground that Nava's written statement from the day of the robbery, which did not include information about a gun and stated she did not know what she read, was more accurate than her trial testimony. The district court overruled Mackroy's objection because it found Nava's testimony credible that the note used the word "gun," which suggested there would be harm. It adopted the presentence investigation report, which calculated a total offense level of 30, criminal-history category of IV, and guideline range of 135 to 168 months.

Mackroy argued for a sentence of 135 months of imprisonment based on his difficult upbringing, his history of incarceration, the nonviolent nature of the offenses, and his history of substance abuse. The government reiterated its request for 25 years of imprisonment based on the seriousness of the offenses involving four separate robberies, his potential for recidivism by committing these offenses before he completed his sentence for a prior robbery, and his dishonesty in committing perjury. The district court stated that it had considered the statutory sentencing factors. *See* 18 U.S.C. § 3553(a). It discussed Mackroy's difficult upbringing and legal and

behavioral issues as a juvenile. It then recounted his probation violations, prison record, commission of the instant offenses while at a halfway house, dishonesty with the court, and violent criminal history. It stated that Mackroy's criminal-history category did not incorporate any of his violent behavior as a juvenile and that he was not compliant under supervision. The district court expressed its concerns about Mackroy's likelihood of recidivism, the need to deter him, and the need to protect public safety. The district court also determined that the guideline range did not accurately reflect the seriousness of Mackroy's conduct involving multiple robberies. It ruled that his propensity for criminal conduct and the fact that he committed the offenses while under supervision warranted the variance. It sentenced Mackroy to concurrent sentences of 240 months of imprisonment as to each count followed by 3 years of supervised release. The district court stated that, while on supervised release, Mackroy would "comply with the standard conditions and mandatory conditions in the Middle District" of Florida. The written judgment contained 13 standard conditions of supervised release. After the district court solicited objections, Mackroy objected to the imposition of an upward variance.

## II. STANDARDS OF REVIEW

We review the cumulative impact of trial errors *de novo*. *United States v. Daniels*, 91 F.4th 1083, 1092 (11th Cir.), *cert. denied*, 144 S. Ct. 2592 (2024). We review an unpreserved challenge to an evidentiary ruling for plain error. *Id.* To establish plain error, a defendant must prove that there was an error that is plain, that affected his substantial rights, and that seriously affects the fairness,

integrity, or public reputation of judicial proceedings. *Id.* at 1095. Although we generally review sufficiency challenges *de novo*, we review arguments not made in a motion for a judgment of acquittal for plain error. *United States v. Zitron*, 810 F.3d 1253, 1260 (11th Cir. 2016). We review *de novo* the interpretation and application of the Sentencing Guidelines, but issues raised for the first time on appeal are reviewed for plain error. *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012). We review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). When a defendant has notice of the standard conditions of supervised release and fails to object, we review for plain error. *United States v. Hayden*, 119 F.4th 832, 838 (11th Cir. 2024).

### III. DISCUSSION

We divide our discussion in five parts. First, we explain that no plain error occurred in admitting statements from Mackroy's interviews. Second, we explain that no plain error occurred in denying the motion for a judgment of acquittal. Third, we explain that no error occurred in applying the enhancement for a threat of death. Fourth, we explain that there was no abuse of discretion in imposing an upward variance. Fifth, we explain that no plain error occurred in imposing the standard conditions of supervised release without orally describing those conditions.

*A. No Reversible Error Occurred in Admitting Statements From Mackroy's Interviews.*

Mackroy argues that the district court erred by admitting testimony and exhibits from his two interviews. Because Mackroy

failed to object to admitting the statements in the district court, we review his challenges for plain error. *See Daniels*, 91 F.4th at 1092. And when reviewing for cumulative error, we review each claim independently and then review the trial to determine if the defendant received a fundamentally fair trial. *Id.* at 1095.

Mackroy argues that Kaufman's testimony regarding his cooperation and knowledge of an unsolved homicide should not have been admitted under Federal Rule of Evidence 403 because those statements had no probative value and created the risk of unfair prejudice, confusion of the issues, and misleading the jury. Rule 403 permits a district court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. "[W]e look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010) (citation and internal quotation marks omitted). Even when a challenge is preserved, exclusion under Rule 403 is an extraordinary remedy. *Id.*

No error occurred. Kaufman described the content and context of his conversation with Mackroy and explained the reason for the conversation—Mackroy's expressed desire to cooperate. Mackroy's desire to cooperate and his demeanor during the interview were probative of his consciousness of guilt. Kaufman's testimony regarding Mackroy's failure to deny he committed the instant offense explained Mackroy's actions instead of suggesting

that Mackroy was untruthful. And Kaufman's testimony about the unsolved homicide explained why Mackroy asked to speak to him without suggesting Mackroy was involved in the homicide. And this information was not so clearly prejudicial that the district court should have *sua sponte* excluded the evidence. *See Daniels*, 91 F.4th at 1095 (A district court plainly errs when evidence is "so obviously inadmissible and prejudicial that . . . the district court, sua sponte, should have excluded the evidence." (citation and internal quotation marks omitted)).

Mackroy also argues that Kaufman's statements about his prior robbery conviction were inadmissible under Rule 404(b). He does not contest the evidence that he was serving a sentence at a halfway house. He instead argues that Agent Kaufman's statements about Mackroy reoffending insinuated Mackroy was a danger to the public.

Evidence is considered intrinsic to the charged conduct and falls outside of Rule 404(b) if it "is inextricably intertwined with the evidence regarding the charged offense." *United States v. Holt*, 777 F.3d 1234, 1262 (11th Cir. 2015). Evidence explaining context and forming an integral part of an account of the crime is intrinsic. *Id.* We have refused to hold that evidence should be excluded under Rule 403 where acts are inextricably intertwined with the crimes charged. *United States v. Horner*, 853 F.3d 1201, 1214 (11th Cir. 2017).

Again, no error occurred. That Mackroy was serving a sentence for his prior robbery conviction in a halfway house was inextricably intertwined with the evidence regarding his instant offense

because surveillance video and records of his whereabouts from the halfway house were necessary circumstantial evidence. *See Holt*, 777 F.3d at 1262. And to the extent Kaufman's comments alluding to the nature of the prior offense, the length of Mackroy's prior sentence, Mackroy's recommission of the same crimes, and any danger Mackroy posed to the public were unduly prejudicial, any error in failing to exclude those statements is not plain where we have refused to exclude such intrinsic evidence under Rule 403. *See Horner*, 853 F.3d at 1214.

Mackroy also argues that Agent Kaufman's opinion about his demeanor was impermissible lay testimony. Lay opinions must be rationally based on the witness's perception, helpful to understanding the testimony or determining a fact at issue, and not based on specialized knowledge. Fed. R. Evid. 701. Opinion testimony that embraces the ultimate issue is not automatically objectionable. *Id.* R. 704(a). Lay opinions regarding the ultimate issue are properly admitted if they are based on the personal observations of the witness. *United States v. Campo*, 840 F.3d 1249, 1266–67 (11th Cir. 2016). And lay witnesses may draw on their professional experiences to guide their opinions without being treated as expert witnesses. *United States v. Jeri*, 869 F.3d 1247, 1265 (11th Cir. 2017).

No error occurred. Kaufman's testimony about Mackroy's demeanor during the interview was based on his personal observations of Mackroy during the interview and his professional experience. *See Campo*, 840 F.3d at 1266–67; *Jeri*, 869 F.3d at 1265. These observations were not automatically objectionable because they

embraced the ultimate issue of Mackroy's guilt. Fed. R. Evid. 704(a).

Last, Mackroy argues that Kaufman's statement that his DNA had been recovered from the targeted banks was inadmissible hearsay, but we disagree. Kaufman's statement was not hearsay because it was not offered to prove that there was DNA at the scene. *See id.* R. 801(c). The district court did not plainly err in admitting this evidence.

Even if Mackroy could establish plain error in admitting any of these statements, he has not proved that the error affected his substantial rights by establishing a reasonable probability that, but for the error, a different outcome would have occurred. *United States v. Margarita Garcia*, 906 F.3d 1255, 1267 (11th Cir. 2018). Even without Kaufman's statements, there is not a reasonable probability that the jury would have acquitted Mackroy. The government established Mackroy's guilt beyond a reasonable doubt through evidence of his fingerprints on the robbery note, consistencies in his appearance and surveillance footage of the robberies, his absences from the halfway house during each robbery, his cell phone's location near the banks, his car's location near the banks, and searches regarding the robberies. And because there was no error in admitting the evidence, there was no cumulative error. *Daniels*, 91 F.4th at 1101 ("Where there is no error or only a single error, there can be no cumulative error.").

### B.  No Plain Error Occurred in Denying Mackroy's Motion for a Judgment of Acquittal.

Mackroy argues that the district court erred in denying his motion for a judgment of acquittal because the government had failed to establish beyond a reasonable doubt that the banks were federally insured at the time of the offense, instead of at the time of trial, and that the tellers' testimony based on signs was unreliable hearsay. The government argues that we should review Mackroy's challenge for plain error because he failed to raise this argument in his motion for a judgment of acquittal, but Mackroy argues we should review his challenge *de novo*.

We review Mackroy's challenge for plain error. Although he made a general motion for a judgment of acquittal, he did not argue that the government had not proved that the banks were federally insured. *See Zitron*, 810 F.3d at 1260. And he does not challenge the denial of his motion for a new trial on appeal.

The district court did not plainly err in denying Mackroy's motion for a judgment of acquittal. To prove a violation of section 2113(a), the government must establish that the bank was insured at the time of the robbery. *United States v. Caldwell*, 963 F.3d 1067, 1076 (11th Cir. 2020). Although we have stated that ideally the government would provide contemporaneous evidence of insurance or evidence of insurance both before and after the offense, we have set a low threshold of proof. *Id.* We held on plain error review that testimony that a bank was insured at the time of trial, combined with the "nearly universal prevalence" of banks having

their deposits insured allows jurors to infer that the bank was insured at the time of the offense. *Cook v. United States*, 320 F.2d 258, 259–60 (5th Cir. 1963). Mackroy relies on *United States v. Platenburg*, 657 F.2d 797, 799–800 (5th Cir. 1981), and *United States v. Dennis*, 237 F.3d 1295, 1304–05 (11th Cir. 2001), to argue that the evidence was insufficient. But *Platenburg* involved a challenge to a years old certificate of insurance, and *Dennis* involved a statement by an FBI agent with no personal knowledge of the bank's insured status. *See* 657 F.2d at 799–800; 237 F.3d at 1304–05. Instead, as in *Cook*, the government provided testimony from an employee at each bank that the banks were insured at the time of trial— just six months after the robberies. This testimony, combined with the "nearly universal prevalence" of banks being federally insured, was sufficient evidence for a reasonable jury to find that the banks were insured at the time of the robberies under our precedent. *See Cook*, 320 F.2d at 259–60.

### C.  *The District Court Did Not Err in Applying the Enhancement for a Threat of Death.*

Mackroy argues that the district court erred by applying the enhancement for a threat of death because Nava's testimony that the note used the word "gun" and that she believed Mackroy kept his hands in his sweater because he had a gun was insufficient. The government argues we should review Mackroy's challenge for plain error because his challenge below focused on the credibility of Nava's statements. But we review Mackroy's argument *de novo* because he objects to the enhancement on appeal under the same basic legal theory that he raised before the district court at

sentencing—that Nava's testimony about the presence of a gun was insufficient to support the enhancement.

The district court did not err in applying the enhancement for a threat of death. A two-level enhancement applies where a threat of death was made during a robbery. U.S.S.G. § 2B3.1(b)(2)(F). We "consider whether the defendant's overall conduct would have instilled the fear of death in a reasonable person." *United States v. Perez*, 943 F.3d 1329, 1333 (11th Cir. 2019). "[T]he actual victim's subjective fear is not dispositive, though it may be indicative of whether a reasonable person would have feared death based on the defendant's conduct." *Id.* In *United States v. Murphy*, we held that a defendant handing a bank teller a note stating, "You have ten seconds to hand me all the money in your top drawer. I have a gun. Give me the note back now," constituted a threat of death because the teller would have reasonably thought that if he did not give the money to the robber, he would be shot. 306 F.3d 1087, 1089 (11th Cir. 2002). Nava's testimony that she was handed a note which included the word "gun" supported the inference that a reasonable person would believe if they did not hand over the money they would be shot. *See id.* This inference is especially reasonable considering the additional context that Mackroy left one of his hands in his sweater, which scared Nava, and led her to believe that he had a weapon. That conduct combined with a statement about a gun would have instilled a fear of death in a reasonable person. *See Perez*, 943 F.3d at 1333.

### D. *The District Court Did Not Abuse its Discretion by Imposing an Upward Variance.*

Mackroy argues that the district court abused its discretion by imposing a sentence above the guideline range in the light of mitigating factors, including his disadvantaged childhood, his history of substance abuse, and the nonviolent nature of the offense. He argues that the district court should not have relied on his criminal history and propensity for criminal conduct because they had already been accounted for in the guideline range. We disagree.

The district court imposes a substantively unreasonable sentence when it fails to afford consideration to relevant factors that were due significant weight, gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering the proper factors. *United States v. Taylor*, 997 F.3d 1348, 1355 (11th Cir. 2021). We will disturb a sentence "only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by imposing a sentence that falls outside the range of reasonableness as dictated by the facts of the case." *Id.* (citation and internal quotation marks omitted). The district court may "attach great weight" to one factor over others and this discretion is "particularly pronounced when it comes to weighing criminal history." *United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021) (citation and internal quotation marks omitted). "We do not presume that a sentence outside the guideline range is unreasonable and must give due deference to the district court's decision that the § 3553(a) factors, as a whole, justify the extent of the variance." *United States v.*

*Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020). "Although there is no proportionality principle in sentencing, a major variance does require a more significant justification than a minor one—the requirement is that the justification be sufficiently compelling to support the degree of the variance." *United States v. Irey*, 612 F.3d 1160, 1196 (11th Cir. 2010) (en banc) (citation and internal quotation marks omitted).

The district court did not abuse its discretion in imposing an upward variance because it sufficiently justified its variance. *See id.* The district court discussed the statutory sentencing factors and recounted the mitigating circumstances of Mackroy's difficult youth. But it found that his propensity for criminal conduct and likelihood of recidivism supported the upward variance, recounting his violent criminal history from a young age, misconduct in prison and on supervision, and commission of the instant offense while finishing his sentence. The district court was allowed to "attach great weight" to Mackroy's likelihood of recidivism and violent criminal history and weigh those factors more heavily than any mitigating circumstances. *See Riley*, 995 F.3d at 1279. And it explained that the guideline range did not reflect his violent criminal history as a juvenile and the seriousness of the offense in committing four robberies. We cannot say the district court committed a clear error of judgment in imposing a substantial upward variance. *See Taylor*, 997 F.3d at 1355.

### E.  No Plain Error Occurred in Failing to Describe Orally the Standard Conditions of Supervised Release.

The parties dispute the applicable standard of review for Mackroy's argument that the district court erred by imposing standard conditions of supervised release not orally pronounced at sentencing. The government argues that plain error review applies because Mackroy had adequate notice of the standard conditions of release and failed to object, and Mackroy argues that we should review his challenge *de novo* because he had no opportunity to object.

*Hayden* controls our standard of review. Mackroy had adequate notice of the standard conditions of supervised release when the district court orally pronounced that he must "comply with the standard conditions and mandatory conditions in the Middle District" of Florida and solicited objections. *See Hayden*, 119 F.4th at 838. Because Mackroy did not object, we review his challenge for plain error. *See id.*

Under *Hayden*, the district court did not err, much less plainly err, when it failed to describe the conditions of supervised release in its oral pronouncement. In *Hayden*, we held that the district court did not err by failing to describe each condition of supervised release in its oral pronouncement when it referred to the standard conditions adopted by the Middle District of Florida, which were publicly available, tracked the standard conditions in the relevant sentencing guideline, and did not conflict with the written judgment. *Id.* at 838–39. Here too the district court stated

20                    Opinion of the Court                    23-10404

that Mackroy would need to comply with the publicly available standard conditions of supervised release adopted by the Middle District of Florida, which matched the standard conditions in the relevant sentencing guideline and did not conflict with the written judgment. *See id.*; *AO 245B Judgment in a Criminal Case*, U.S. DIST. CT. FOR THE M.D. OF FLA., at 6, https://perma.cc/ZHW3-727A (last visited Jan. 21, 2024); U.S.S.G. § 5D1.3(c).

## IV. CONCLUSION

We **AFFIRM** Mackroy's convictions and sentence.