[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12522

_____

D.C. Docket No. 0:18-cr-60337-JEM-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALVARO VALDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 9, 2021)

Before MARTIN, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Defendant Alvaro Valdez pled guilty to conspiring to sex traffic a minor of at least fourteen but not yet eighteen years of age by patronizing the minor in a

commercial sex act after having had a reasonable opportunity to observe the minor. At Valdez's sentencing, the district court applied, among other things, the base offense level applicable to the underlying substantive crime and a specific offense characteristic that requires the use of a computer in perpetrating the offense. It also denied Valdez a minor-role reduction. Valdez now challenges all three rulings and also contends his sentence is substantively unreasonable. After careful consideration and with the benefit of oral argument, we affirm.

**I.**

*A.    The Origins of the Investigation of Valdez*

Valdez's troubles began on February 28, 2018, when a distressed mother reported to law enforcement that she had seen a video of her 15-year-old daughter ("Minor A") performing oral sex on a man. That man turned out to be 22-year-old Defendant Alvaro Valdez, and he had posted the video on his Instagram account. While executing a search warrant on the Instagram account, law enforcement found a second video of Minor A in which Minor A took her top off.

Based on these events, law enforcement arrested Valdez. At the time of his arrest, Valdez had an iPhone with him. Valdez waived his *Miranda*[1] rights and told law enforcement that he had used that iPhone to take the video of himself with Minor A. He explained that he had met Minor A after responding to an advertisement on

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Backpage.com, which bore an image of two female individuals with their breasts and vaginas exposed.

B.    *Maria Gonzalez and Anthony Zapata's Backpage.com Operation*

As it turned out, earlier, law enforcement had learned of the operation advertised on Backpage. On February 10, 2018, Broward County Sheriff's Office deputies happened to be at a Budgetel Inn in Pompano Beach, Florida, investigating reports of unrelated criminal activity. While they were there, the deputies encountered Maria Gonzalez and Minor A, Gonzalez's half sister. Minor A told the deputies that Gonzalez had given her marijuana and alprazolam and forced her to have sexual intercourse with different men in exchange for money.

The motel's security surveillance video showed that several men had visited Gonzalez and Minor A's hotel room, and law enforcement saw used contraceptives and contraceptive wrappers inside their room. When officers searched Gonzalez's iPhone, they found several text messages from different numbers trying to arrange times to engage in sexual intercourse in exchange for money. They also discovered several missed calls and text messages from "Kiki," later identified as Joaquin Zapata, Gonzalez's stepbrother. Minor A informed law enforcement that she saw Zapata at least once every day she stayed at the motel.

No wonder. Zapata, officers learned from reviewing Budgetel records, was the one who had rented the motel rooms for Gonzalez and Minor A for the periods

3

February 3 through 8, 2018, and February 9 and 10, 2018. Zapata also obtained the Bitcoin that was used to pay for Backpage.com advertisements, which, in turn, were also associated with a gmail account in Gonzalez's name. And when Zapata gave a post-*Miranda* statement, he explained that Gonzalez had direct messaged him, asking for his help to establish their commercial sex-act operation.

## C.    The Video of Minor B

Besides Valdez's activities with Minor A, law enforcement learned that Valdez had taken a video of himself engaging in sexual activity with Minor B, a seventeen-year-old girl. Minor B advised the probation officer that she had met face-to-face with Valdez from November through December of 2017, when Valdez was 21 and Minor B was 17, and had engaged in sexual activity with him during that period. During their encounters, Minor B recounted, Valdez had taken video. He posted that video on his Snapchat account when Minor B decided she no longer wanted to be involved with him.

## D.    The Federal Charges

Valdez, Gonzalez, and Zapata were all federally indicted. They were charged with sex trafficking children and conspiracy to sex traffic a child under the age of eighteen. The same indictment charged Valdez with two counts of production of child pornography. Zapata's and Gonzalez's cases were separately resolved.

Ultimately, Valdez pled guilty to Counts 1 and 3 of a superseding information. Count 1 charged Valdez with conspiring with Gonzalez and Zapata to patronize Minor A in a commercial sex act, "knowing, and in reckless disregard of the fact, and having had a reasonable opportunity to observe MINOR A, that MINOR A had not attained the age of 18 years at the time of the offense." The information specified that the conspiracy occurred "in violation of [18 U.S.C. §§] 1591(a)(1), (b)(2) and (c); all in violation of [18 U.S.C. §] 1594(c)." Section 1591(b)(2) makes the penalty for a violation of § 1591(a) at least ten years' imprisonment, with a maximum of life, if the minor involved was at least fourteen but not yet eighteen years old. 18 U.S.C. § 1591(b)(2). And § 1591(c) removes the requirement that the government prove the defendant's knowledge or reckless disregard of the minor's age if "the defendant had a reasonable opportunity to observe the [minor]." 18 U.S.C. § 1591(c). Count 3 alleged that Valdez had distributed child pornography, in connection with his posting of the video of Minor B on Snapchat, in violation of 18 U.S.C. §§ 2256(2) and 2252(a)(2) and (b)(1).

At the change-of-plea hearing, the government clarified Count 1 of the information. It noted that, in general, conduct involving recruiting or enticing a minor to engage in commercial sexual acts can violate §§ 1594(c) and 1591(a)(1), (b)(2), and (c). But in Valdez's "particular" case, "his involvement was patronizing" an operation that offered minors for participation in sexual acts. In fact, the

5

government conceded that Valdez "didn't recruit or entice the minor; rather, he was a customer and he patronized. And under the new statute, that is one way of proving the sex trafficking." To reflect that limitation, the parties altered the plea agreement to state, "The defendant agrees to plead guilty to Count[] 1 . . . of the Superseding Information, which charge[s] that he did knowingly, in and affecting interstate commerce, conspire to sex traffic a minor *by patronizing*; in violation of [18 U.S.C. §] 1594 . . . ." (emphasis added).

Also during the plea hearing, counsel for Valdez explained on the record that under the plea agreement, "chances [were] on Count 1, [Valdez would] start at Level 30, and then add from there . . . , up into a possible 121 [months' imprisonment] or higher." Counsel and the government agreed that had Valdez proceeded to trial on the indictment (which charged production instead of distribution, as in the information) and had he been found guilty of all counts, the district court would have been statutorily required to sentence Valdez to 180 months' imprisonment, at a minimum.

At sentencing, the district court applied the substantive offense guideline for §§ 1591(a) and (b)(2) to determine the adjusted offense level applicable to the conspiracy. As relevant here, that guideline is U.S.S.G. § 2G1.3, and it provides for a base offense level of "30, if the defendant was convicted under 18 U.S.C. § 1591(b)(2)" or of "24, otherwise." U.S.S.G. § 2G1.3(a)(2), (4). Over Valdez's

objection, the district court applied the base offense level of 30.  To that, the district court added four more points:  two because it found that the offense "involved the use of a computer . . . to . . . entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor," *id.* § 2G1.3(b)(3)(B), and another two because it concluded that the offense "involved the commission of a sex act or sexual contact," *id.* § 2G1.3(b)(4)(A).  Valdez objected to the enhancement for the use of a computer.

He also argued that he was entitled to a minor-role deduction for his part in the conspiracy.  The district court denied the adjustment.

That yielded a total of 34 points, to which the district court added another point after it applied the Guidelines grouping requirements to account for Count 3. *See* U.S.S.G. § 3D1.4.  So that totaled 35 points.  From that tally, the court subtracted three points for super-acceptance of responsibility, bringing the offense calculation to a level of 32.  With a criminal-history category of I, Valdez's advisory Guidelines range was 121 to 151 months' imprisonment.

The district court sentenced Valdez to 121 months' imprisonment on each of Counts 1 and 3, to be served concurrently.  It also ordered forfeiture of Valdez's phone.  And in a separate hearing later, the court ordered $4,000 in restitution to the victims of Valdez's offenses.

7

Valdez now appeals his sentence of imprisonment.  He argues that it is both procedurally and substantively unreasonable.

## II.

We conduct a *de novo* review of the district court's legal interpretation of the Sentencing Guidelines.  *United States v. Perez*, 943 F.3d 1329, 1332 (11th Cir. 2019).  But we review the district court's factual findings for clear error.  *Id.* at 1332-33; *see also* 18 U.S.C. § 3742(e).

As for the district court's application of the Guidelines to the facts, as relevant here, we "give due deference."  18 U.S.C. § 3742(e).  We assess "due deference" in any particular case on a "sliding scale."  *United States v. Williams*, 340 F.3d 1231, 1238 (11th Cir. 2003).  In other words, "we give the district court the deference that is due in regard to [the nature of the] finding."  *Id.* at 1239 (citation and quotation marks omitted).  We have explained that the two most important factors in determining the level of deference due include "(1) whether the ruling depends on a wide range of facts that are more readily available to the district court than to the court of appeals, due to the district court's first-hand experience trying the case," in which case more deference is due, and "(2) whether the issue primarily involves a legal interpretation of a guideline (suggesting *de novo* review)."  *Id.*

**III.**

Our review of the reasonableness of a sentence requires us to undertake a two-step process. *United States v. Fox*, 926 F.3d 1275, 1278 (11th Cir. 2019). At the first step, we review the sentence for procedural reasonableness to ensure a correct calculation and application of the Sentencing Guidelines. *Id.* If we conclude that the sentence is procedurally reasonable, we move onto the second step and evaluate whether the sentence is substantively reasonable, considering the totality of the circumstances and the factors set forth at 18 U.S.C. § 3553(a). *Id.*

**A.    Valdez's sentence is procedurally reasonable**

Here, Valdez raises three procedural-reasonableness challenges: (1) he contends that the district court wrongly applied a base offense level of 30 instead of 24 under U.S.S.G. § 2G1.3(a); (2) he asserts that he was not eligible for the two-point computer enhancement under U.S.S.G. § 2G1.3(b)(3)(B); and (3) he argues that he was entitled to a two-point deduction under U.S.S.G. § 3B1.2(b) because he allegedly played a minor role in the conspiracy.

In performing our procedural-reasonableness review, we start with the language of the Guidelines, and we account for both the Guidelines and the commentary. *United States v. Fulford*, 662 F.3d 1174, 1177 (11th Cir. 2011) (citation omitted). We read the language of the Guidelines according to "its plain and ordinary meaning." *Id.* (citation and quotation marks omitted). As for the

9

Guidelines' commentary, it "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of" the guideline to which it pertains. *Id.* (citation and quotation marks omitted). With these standards in mind, we consider each of Valdez's procedural-reasonableness challenges in turn.

1.    *The district court correctly applied a base offense level of 30 under U.S.S.G. § 2G1.3(a)*

As its title indicates, U.S.S.G. § 2G1.3 applies to substantive crimes involving, among other things, "promoting a commercial sex act or prohibited sexual conduct with a minor." U.S.S.G. § 2G1.3 (capitalization omitted). Subsection (a) of § 2G1.3 sets forth the base offense level. In relevant part, it provides for a base offense level of "30, if the defendant was convicted under 18 U.S.C. § 1591(b)(2)" and of "24, otherwise." U.S.S.G. § 2G1.3(a)(2), (4).

a.    Valdez's Argument

Valdez notes that he was convicted under 18 U.S.C. § 1594(c) for conspiracy to violate § 1591; he was not convicted of the substantive offense of § 1591, as punishable under 18 U.S.C. § 1591(b)(2). He argues that because he was convicted of conspiracy—under § 1594(c)—he was not "convicted under 18 U.S.C. § 1591(b)(2)," U.S.S.G. § 2G1.3(a)(2), so he was "otherwise" convicted, entitling him to a base offense level of 24.

10

There is some logic to this argument. After all, the penalties that §§ 1591(b)(2) and 1594(c) authorize are a bit different. As relevant here, § 1591(a) makes it a crime to patronize any person, in reckless disregard of the fact that that person is not yet eighteen years old and will be caused to engage in a commercial sex act. 18 U.S.C. § 1591(a)(1). When the minor involved is at least fourteen but not yet eighteen years old, § 1591(b)(2) applies for a violation of § 1591(a). That penalty provision imposes a minimum mandatory sentence of ten years' imprisonment and a maximum of life. 18 U.S.C. § 1591(b)(2). But § 1594 establishes no minimum mandatory sentence for conspiring to violate § 1591—even if the conspiracy involved a minor who was at least fourteen but not yet eighteen years old. *See* 18 U.S.C. § 1594(c). Instead, it allows imprisonment "for any term of years or for life." *Id.*

b.    <u>The plain meaning of the applicable guidelines and their commentary requires us to find a base offense level of 30</u>

Though the crime of conspiracy under § 1594(c) does not share the same minimum mandatory ten-year sentence as the substantive crime penalized by § 1591(b)(2), that is not enough to allow us to ignore the plain meaning of the applicable guidelines here. Valdez does not argue—and we find no basis for concluding—that § 1594(c)'s lack of a minimum mandatory sentence required the Sentencing Commission to promulgate guidelines that punish conspiracy offenses under § 1594(c) and substantive offenses punishable under § 1591(b)(2) differently.

11

And here, the applicable guidelines show that the Sentencing Commission chose to punish both the same way.

We begin our analysis with U.S.S.G. § 1B1.1(a)(1), which tells us to "[d]etermine, pursuant to § 1B1.2 . . . , the offense guideline section . . . applicable to the offense of conviction." Under § 1B1.2, when a conviction involves a conspiracy offense, we must consult "§ 2X1.1 . . . as well as the guideline . . . for the substantive offense." U.S.S.G. § 1B1.2(a). Section 2X1.1, in turn, is the guideline that addresses conspiracy offenses that are not covered by a specific offense guideline. For clarity, the commentary to § 2X1.1 identifies all guidelines that specifically cover conspiracy offenses. *See* U.S.S.G. § 2X1.1 cmt. n.1. None of the specific offense guidelines that could apply to a § 1594(c) conspiracy to violate § 1591 appear on that list, so § 2X1.1 applies to those conspiracy offenses.

Under § 2X1.1(a), the base offense level for conspiracy to commit a crime not addressed by a specific offense guideline is "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S.S.G. 2X1.1(a). In short, § 2X1.1 requires the base offense level for a conspiracy conviction to "be the same as that for the substantive offense." U.S.S.G. § 2X1.1 cmt. n.2. As the commentary to § 2X1.1 explains, "[s]ubstantive offense" means "the offense that the defendant was convicted of . . . conspiring to commit." *Id.*

12

Here, Valdez pled guilty to an information that expressly charged him with conspiring to violate 18 U.S.C. §§ 1591(a)(1), (b)(2) and (c).  The specific offense guideline for § 1591(a)(1) where conduct satisfying § 1591(b)(2) occurred is U.S.S.G. § 2G1.3.[2]  So the plain language of § 2X1.1(a) requires us to apply § 2G1.3 to Valdez's conviction for conspiracy to violate § 1591(a) where conduct satisfying § 1591(b)(2) occurred, as though he had actually committed the substantive offense under §§ 1591(a) and (b)(2).[3]  And more specifically, § 2G1.3(a)(2)—which imposes a base offense level of "30, if the defendant was convicted under 18 U.S.C. § 1591(b)(2)"—controls Valdez's conspiracy conviction here because that is the base offense level that would apply if Valdez had committed the substantive offense under §§ 1591(a) and (b)(2).

The commentary to U.S.S.G. § 1B1.3 removes any doubt about our interpretation of § 2G1.3.  Application note 7 is clear that when a guideline makes a base offense level dependent on a defendant's having been "convicted under [a

---

[2] Appendix A of the Guidelines Manual identifies U.S.S.G. §§ 2G1.1, 2G1.3, and 2G2.1 as potential matches for violations of 18 U.S.C. § 1591.  Section 2G1.3 is the only one of these three guidelines that could apply here.  Its title specifies that it governs cases involving substantive conduct like Valdez's, where the defendant has participated in a commercial sex act with a minor.  And it expressly mentions § 1591(b)(2).  Section 2G1.1, in contrast, controls when the offense involves promoting a commercial sex act or prohibited sexual conduct with someone other than a minor.  And § 2G2.1 applies when the offense involves, among other things, the production of sexually explicit visual or printed material involving a minor.  Unlike § 2G1.3, neither § 2G1.1 nor § 2G2.1 mentions § 1591(b)(2).

[3] If a conspiracy has not accomplished all acts the conspirators thought necessary for the successful completion of the substantive offense, § 2X1.1(b)(2) directs the court to decrease the offense level by three points.  Here, that provision does not apply.

13

particular statute]," that same base offense level applies "where the defendant was convicted of conspiracy . . . in respect to that particular statute." U.S.S.G. § 1B1.3 cmt. n.7. So § 2G1.3(a)(2) applies to Valdez's conspiracy conviction because he was convicted of conspiracy with respect to § 1591(b)(2). The plain language of the Guidelines is unambiguous, and it governs the beginning and end of our analysis.

      c.     *Wei Lin* is distinguishable

We acknowledge that in *United States v. Lin*, 841 F.3d 823 (9th Cir. 2016), the Ninth Circuit reached a different conclusion when it determined the applicable base offense level for a § 1594(c) conspiracy offense under a similar guideline. There, the Ninth Circuit considered the correct base offense level to apply for conspiracy to violate 18 U.S.C. § 1591(a) where the applicable penalty provision for the substantive crime would have been § 1591(b)*(1)* (sex trafficking involving fraud or coercion). A different guideline—U.S.S.G. § 2G1.1—covered the substantive offense that was the object of the conspiracy because minors were not involved.

Similarly to § 2G1.3(a), § 2G1.1(a) provides for a base offense level of "(1) 34, if the offense of conviction is 18 U.S.C. § 1591(b)(1); or (2) 14, otherwise." The Ninth Circuit determined that a base offense level of 14 under § 2G1.1(a)(2) should apply for conspiracy to violate 18 U.S.C. § 1591(a) where the penalty provision of § 1591(b)(1) applies, instead of a base offense level of 34 under § 2G1.1(a)(1). *See Lin*, 841 F.3d at 825-27.

14

The Ninth Circuit reached this conclusion because § 1591(b)(1) (like § 1591(b)(2)) is solely a penalty provision. *See id.* So the Ninth Circuit reasoned that "[t]he most straightforward interpretation" of the guideline required the conclusion that "the offense of conviction" under § 2G1.1 was § 1591(b)(1) only "if the defendant was convicted of an offense subject to the punishment provided in 18 U.S.C. § 1591(b)(1)—that is, . . . the defendant [was] subject to the statute's fifteen-year mandatory minimum sentence." *Id*. at 826. Because a conspiracy conviction under § 1594(c) does not subject a defendant to § 1591(b)(1)'s fifteen-year mandatory minimum sentence, the Ninth Circuit did not apply the base offense level for a violation that satisfies the penalty provision of § 1591(b)(1). *See id.* at 827. In further support of this interpretation, the Ninth Circuit asserted that its understanding was "most likely what the Sentencing Commission intended," based on the Ninth Circuit's review of the history of § 2G1.1. *See id.*

Valdez's circumstances here differ from Lin's. Lin pled guilty to violating 18 U.S.C. § 1594(c) by conspiring to violate 18 U.S.C. § 1591(a), but his plea agreement and judgment did not mention the penalty provision of § 1591(b)(1), even though the facts in Lin's case satisfied the requirements of § 1591(b)(1)'s penalty provision. *Id.* at 825. Plus, Lin's attorney erroneously advised Lin before he pled guilty that his base offense level under the Guidelines would be a level 14. *Id.*

15

Here, though, Valdez pled guilty to conspiring to violate §§ 1591(a), (b)(2), and (c), and his plea agreement expressly incorporated the charging language of Count 1 of the superseding information—language that referenced § 1591(b)(2). Not only that, but Valdez's own attorney explained at Valdez's change-of-plea hearing that he anticipated that Valdez would receive a base offense level of 30, which could happen only if subsection 2G1.3(a)(2) applied. So in Valdez's case, there is no question that he understood when he pled guilty that he was pleading guilty to conspiring to violate § 1591(a) by patronizing a minor who was at least fourteen but not yet eighteen years old in a commercial sex act—that is, conduct covered by § 1591(b)(2).

Not only that, but the language of the § 2G1.1 base-offense-level provision, which governed Lin's sentence, differs in an important way from that of § 2G1.3's: subsection 2G1.1(a) provides for an offense level of 34 "*if the offense of conviction is* 18 U.S.C. § 1591(b)(1)," *see* U.S.S.G. § 2G1.1(a)(1) (emphasis added), while § 2G1.3(a), which controls Valdez's sentence, specifies a base offense level of 30 "*if the defendant was convicted under* 18 U.S.C. § 1591(b)(2)." *See* U.S.S.G. § 2G1.3(a)(2) (emphasis added). And it was the "offense of conviction" language from § 2G1.1(a) that the Ninth Circuit construed. But whatever the definition of "offense of conviction" for purposes of § 2G1.1(a)—a question we need not decide

16

here[4]—the Guidelines tell us to construe the "was convicted under" language from § 2G1.3(a) to mean the defendant pled guilty to or was charged with and otherwise convicted of engaging in a conspiracy "[with] respect to" § 1591(b)(2). *See* U.S.S.G. § 1B1.3 cmt. n.7. For these reasons, *Lin*'s analysis does not apply here, and the district court did not err in finding a base offense level of 30.

2.    *The district court did not err in applying the two-point enhancement under U.S.S.G. § 2G1.3(b)(3) for use of a computer to entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor*

Valdez next challenges the two-point enhancement under § 2G1.3 for use of a computer. Subsection 2G1.3(b)(3)(B) applies "[i]f the offense involved the use of a computer or an interactive computer service to . . . (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor." U.S.S.G. § 2G1.3(b)(3)(B). The government bears the burden of proving the applicability of a sentencing enhancement by a preponderance of the evidence. *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013).

---

[4] While we do not weigh in on the correctness of the Ninth Circuit's analysis, for completeness, we note that the Third and Eighth Circuits have disagreed with *Lin*'s construction of the application of § 2G1.1(a)'s base offense level to conspiracy violations, based on their plain-language assessment of the guideline. *See United States v. Sims*, 957 F.3d 362, 363-64 (3d Cir. 2020); *United States v. Carter*, 960 F.3d 1007, 1013-14 (8th Cir. 2020). Beyond that, in the Third Circuit's view, the Ninth Circuit's interpretation "would lead to absurd results." *Sims*, 957 F.3d at 364. For example, the Third Circuit pointed out that *Lin*'s interpretation could lead to a scenario where the advisory imprisonment range for a sex-trafficking conspiracy is more than twice as low than the range for a labor-trafficking conspiracy. *Id*. The Third Circuit found this "inconceivable." *Id*.; *see also* Victims of Trafficking and Violence Protection Act of 2000, P.L. 106-386, § 103(8)(A), 114 Stat. 1464, 1470 (codified at 22 U.S.C. § 7102(11)(A) (Oct. 28, 2000)) (describing "sex trafficking . . . in which the person induced to perform [a commercial sex act] has not attained 18 years of age," as a "severe form[] of trafficking in persons").

Here, as we have noted, Valdez's offense is conspiracy to patronize a minor who was at least fourteen but not yet eighteen years old in a commercial sex act, after having had a reasonable opportunity to have observed the minor and in reckless disregard of her age. The district court applied the enhancement because the Backpage ad to which Valdez responded was "[p]osted on the internet." It's not clear from the record whether the district court considered Valdez's coconspirators' placement of the ad on the internet, Valdez's viewing of the ad on the internet, or both to satisfy the enhancement, so we consider each possibility.

We begin by noting that Congress amended § 1591(a) in 2015 to make patronizing—as opposed to recruiting, enticing, harboring, transporting, obtaining, advertising, maintaining and solicitation—a minor a violation. *See* Justice for Victims of Trafficking Act of 2015, Pub. L. 114-22, § 108, 129 Stat. 227, 238 (codified as amended at 18 U.S.C. § 1591(a)(1)). But since Congress amended the statute, the Sentencing Commission has not amended U.S.S.G. § 2G1.3(b)(3)(B) in the same way. So while the statute prohibits patronizing, the computer enhancement makes no mention of patronizing and applies only when a computer is used to "entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor."

Rather, the enhancement focuses on whether a computer was used in the "offense," and here, the offense to which Valdez pled guilty was conspiracy to

18

patronize a minor in a commercial sex act.  We therefore must consider whether the use of a computer to solicit Valdez fell within the parameters of the particular conspiracy to which Valdez pled guilty.  Here, a computer[5] was used to post and view the Backpage ad, and a computer was used to arrange by direct messaging[6] the meeting between Valdez and who turned out to be Minor A.

Valdez participated in a "jointly undertaken criminal activity," as the Guidelines define that phrase.  *See* U.S.S.G. § 1B1.3(a)(1)(B).  When we are talking about that type of activity, U.S.S.G. § 1B1.3(a)(1)(B) governs those acts for which a defendant may be held responsible.  *See United States v. Gallo*, 195 F.3d 1278, 1281 (11th Cir. 1999).  It provides for a defendant's liability for the acts of others only when they were "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B).

Here, on the unique facts of this case, all three circumstances apply.  Valdez pled guilty to conspiracy to patronize a minor who was at least fourteen but not yet eighteen years old in a commercial sex act.  And even if the government did not

---

[5] Valdez technically used a smartphone, not a computer, in this case.  The commentary to § 2G1.3 instructs us to use the definition of computer located in 18 U.S.C. § 1030(e)(1).  U.S.S.G. § 2G1.3 cmt. n.1.  We have held that a smartphone qualifies as a computer as defined under § 1030(e)(1).  *See United States v. Mathis*, 767 F.3d 1264, 1283 (11th Cir. 2014), *abrogated on other grounds by Lockhart v. United States*, 577 U.S. 347 (2016).

[6] The factual proffer supporting Valdez's guilty plea indicated that Valdez believed he communicated with Gonzalez through direct messaging.

19

prove Valdez knew or had reason to know at the time he used a computer that the person with whom he was arranging to engage in a commercial sex act was a minor, it did establish that Gonzalez and Zapata nonetheless used the computer to obtain Valdez's participation in a commercial sex act, and that commercial sex act turned out to be with a minor. So it is technically factually accurate to say that a computer was used to entice, encourage, offer, or solicit Valdez to participate in a sexual act with a minor.

And since Valdez went ahead and participated in a commercial sex act with Minor A after he had a reasonable opportunity to observe her in person, Valdez joined the conspiracy as charged and ratified as a part of the conspiracy Gonzalez and Zapata's use of the computer to obtain his agreement in the conspiracy, even if he was not a part of the conspiracy at the time the ad was posted or he viewed it or he engaged in direct messaging with Gonzalez.[7] In other words, when Valdez had a reasonable opportunity to observe Minor A and agreed to engage in a commercial sex act with her, anyway, he sanctioned Gonzalez and Zapata's use of a computer to

---

[7] To be clear, this situation differs in an important way from that of, for example, the "defendant who joins an ongoing drug distribution conspiracy knowing that it had been selling two kilograms of cocaine per week" before he joined. *See* U.S.S.G. § 1B1.3 cmt. n.3. In that situation, the defendant had no involvement in the activities before he joined and therefore is not liable for the cocaine sold before he joined the conspiracy. But here, Valdez came to be involved in the conspiracy to patronize because of his own review of the Backpage ad that Gonzalez and Zapata posted. Indeed, he would not have patronized Minor A in a commercial sex act but for his use of his cellphone to view the Backpage ad posted by Gonzalez and Lopez. The use of a computer was essential for Valdez to join the conspiracy.

solicit him.  As a result, it was not error for the district court to apply the two-point enhancement for use of a computer.

3.    *The district court did not clearly err in denying Valdez a minor-role adjustment*

Finally, Valdez challenges the district court's decision to deny him a minor-role adjustment under U.S.S.G. § 3B1.2(b).  A minor participant is a defendant who is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id*. cmt. n.5.  A defendant who seeks a minor-role reduction must show by a preponderance of the evidence that he played a minor role in the offense.  *United States v. Presendieu*, 880 F.3d 1228, 1249 (11th Cir. 2018).  Because a district court's conclusion about a defendant's role in the offense is a finding of fact, we review it for clear error.  *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).

In evaluating whether a defendant is entitled to a minor-role adjustment, we have said that two principles control:  (1) the defendant's role in the relevant conduct for which he is being held accountable and (2) the defendant's role measured against those of the other participants in the relevant conduct.  *Id.* at 940.

After we said that, though, the Sentencing Guidelines were amended to set forth factors to evaluate, including (but not limited to) the following:  "(1) the degree to which the defendant understood the scope and structure of the criminal activity; (2) the degree to which the defendant participated in planning or organizing the

21

criminal activity; (3) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (4) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (5) the degree to which the defendant stood to benefit from the criminal activity." *Presendieu*, 880 F.3d at 1249 (quotation marks omitted) (quoting U.S.S.G. § 3B1.2 cmt. n.3(C)).  So all in all, to determine the defendant's role in a case, the district court must consider "the totality of circumstances, taking into account the variety of factors laid out in *De Varon* and [the Sentencing Guidelines]." *United States v. Cruickshank*, 837 F.3d 1182, 1195 (11th Cir. 2016).

Valdez asserts that, in comparison to Gonzalez and Zapata, his own role was minor.  For support, Valdez points to Gonzalez and Zapata's actions in creating and posting the ad on Backpage and renting the hotel room.  He also notes that Gonzalez and Zapata profited from the activity.  And because of their familial relationship with Minor A, Valdez continues, Gonzalez and Zapata knew Minor A's age when they recruited her to participate in prostitution.  Valdez contends that, in comparison, his conduct was less culpable.

The district court rejected that argument.  So do we.  As we have noted time and again, Valdez pled guilty to conspiring to patronize a minor of at least fourteen

22

but not yet eighteen years old in a commercial sex act.  And, as the district court emphasized, he's the one who did the patronizing.  So while Gonzalez and Zapata did not play minor roles in the conspiracy, neither did Valdez.  Not only that, but he took and then posted on Instagram videos of himself engaging in sexual acts with Minor A (and Minor B, for that matter).  The district court held Valdez responsible for his own role in that conduct.  We cannot say that the district court clearly erred in doing so.

## B.    Valdez's sentence is substantively reasonable

We next consider Valdez's argument that his sentence of 121 months' imprisonment is substantively unreasonable.

When it sentences a defendant, a district court must consider the sentencing factors 18 U.S.C. § 3553(a) identifies.[8]  *Fox*, 926 F.3d at 1282.  In so doing, the district court has the discretion to assign the weight it deems appropriate to any specific § 3553(a) factor, and we do not second-guess that weighing.  *Id.*

---

[8] These factors include "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available;" (4) the kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines; (5) any "pertinent policy statement" of the Sentencing Commission; "(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a).

Nevertheless, a district court may abuse its discretion if it (1) does not give consideration to relevant factors that are entitled to significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) makes a clear error of judgment when it evaluates the proper factors. *Id.* Because he challenges his sentence, Valdez bears the burden of showing "that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *Id.* (citation and quotation marks omitted).

Here, Valdez asserts that his sentence is substantively unreasonable because it is greater than necessary to protect the public and further the goals of sentencing. He makes several arguments to support this point: (1) he received a longer sentence (121 months) than either Gonzalez (120 months) or Zapata (96 months), who he argues played a larger role in the conspiracy; (2) he will suffer collateral consequences as the result of his conviction, including his designation as a sex offender; (3) he was youthful and immature when the offense occurred; (4) he had no prior criminal history; (5) he had a reduced mental and emotional capacity; (6) his offense fell outside the "heartland" of typical cases under § 1594; (7) he voluntarily disclosed the offense involving Minor B and cooperated with law enforcement; and (8) his acts were an isolated incident. We conclude that Valdez has not carried his burden to establish his sentence is substantively unreasonable.

24

First, though we may not have imposed the same relative sentences on the coconspirators, we cannot say that the district court's decision here was unreasonable. After all, Valdez pled guilty to conspiracy to patronize a minor in a commercial sex act, and he's the one who did the patronizing. Besides that, as the government argued at sentencing, his other relevant conduct of posting the videos of Minors A and B on social media included acts in which his coconspirators did not engage.

Second, though it is true that Valdez will suffer collateral consequences in the form of being labeled a sex offender, that is true of all defendants who plead guilty to conspiracy to engage in a commercial sex act with a minor or the substantive crime of engaging in a sex act with a minor. It is not unique to Valdez. And the Sentencing Commission was certainly aware of that when it promulgated the applicable guideline.

As for the remainder of Valdez's arguments, the district court stated that, among other things, it had reviewed the PSI and its addendum, the positions of the parties concerning the sentencing factors, Valdez's objections to the PSI, Valdez's motion for a downward departure or variance, and the character letters filed on Valdez's behalf. In addition, counsel argued at the sentencing hearing that Valdez was young and immature, that he had a reduced emotional and mental capacity, that he immediately cooperated with law enforcement, that his case did not fit in the

25

heartland of cases of this type, that his acts were isolated, and that he has no criminal history.

And before imposing sentence, the district judge stated that he had "considered the statements of all the parties, the presentence report which contains the advisory guidelines and the statutory factors as set forth in 18 U.S.C. § 3553(a)." He also voiced that he "underst[oo]d" that Valdez was a young and unsophisticated person and that Valdez's sentence "would be a lot worse" if the district judge did not think that. And he discussed the nature of the offense here and its effect on the two minors of whom Valdez posted video of on the internet, emphasizing the need for a "strong deterrent effect" for this type of conduct.

So it is clear that the district court considered all the facts and arguments Valdez raised and that it accounted for the § 3553(a) factors when it imposed his sentence. And the district court did not consider any improper factors. We are not free to reweigh these things on appeal. The district court did not make a clear error of judgment in evaluating the facts and factors.

Finally, we note that Valdez's 121-month sentence fell at the low end of the 121-to-151-month guidelines range and was well within the statutory maximum of life imprisonment. We "ordinarily expect a sentence within the guidelines range to be reasonable." *United States v. Kirby*, 938 F.3d 1254, 1259 (11th Cir. 2019) (citation and quotation marks omitted). And so we find that to be the case here.

26

## IV.

For the reasons we have explained, we affirm the judgment of the district court.

**AFFIRMED.**